LOUISVILLE & NASHVILLE R. CO. *v.* JANE E. WEAVER.

1. COMMON CARRIER. *Receipt. Evidence* The receipt of goods by a common carrier directed to a place beyond the terminus of the carrier's line, without any limitation of responsibility, is *prima facie* evidence of an undertaking to carry the goods to the place to which they were directed, and renders the carrier liable for their carriage to that point.

Railroad v. Weaver.

2. SAME. *Baggage of passenger.* A carrier contracting, without limitation of responsibility, to carry the baggage of a passenger, and giving a check therefor to a given point beyond the terminus of the carrier's line, becomes liable for the carriage of such baggage in the same way, and to the same extent as the carrier of goods, although the passenger, whose baggage is thus checked, may purchase and travel upon a coupon ticket.

3. SAME. *Same.* Where, therefore, the defendant, a common carrier, sold to the plaintiff tickets for herself and family for transportation by railroad from Memphis, Tenn., to San Francisco, California, each ticket having separate coupons for each carrier over whose road the route lay, and gave plaintiff a check for the carriage of her baggage to Omaha, and a loss of baggage occurred before reaching Omaha but after leaving defendant's own road, the defendant was held liable for the loss.

4. SAME. *Same. Compensation therefor.* The plaintiff at San Francisco applied to the railroad companies whose roads lay beyond Omaha for compensation for the loss, and those companies, while denying all liability, made a deduction upon the plaintiff's return tickets over their roads, in consideration of her release of all claim against them for the alleged loss; it was held that neither the payment nor the release affected the liability of the defendant.

---

FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby county. C. W. HEISKELL, J.

ESTES & ELLETT for Railroad Company.

L. B. MCFARLAND for Weaver.

COOPER, J., delivered the opinion of the court.

The judge of the circuit court tried this case without a jury, and rendered judgment in favor of the plaintiff below, Jane E. Weaver, against the Louisville & Nashville Railroad Company for the amount claimed for loss of baggage, and the company appealed.

The trial judge found that the plaintiff purchased from the agent of the defendant at Memphis through coupon tickets for herself and family from Memphis, Tennessee, *via* Milan, St. Louis and Omaha, to San Francisco, California, and started on the trip May 29, 1877; that her baggage was checked by defendant's agents at Memphis from that city to Omaha; that this baggage was delivered in good order, on the same day, by the defendant to the next connecting road at Milan in this State, and that the loss sued for occurred before the plaintiff with her baggage reached Omaha. The judge further found that the plaintiff, upon discovering her loss after she arrived at San Francisco, applied to the Union and Central Pacific Railroad Companies for compensation for the loss; that the companies denied any liability, but, upon the return trip of the plaintiff in November, allowed her a deduction of between one and two hundred dollars on the cost of transportation over their roads to Omaha, in consideration of her release of all claim against the said Union and Pacific Railroad Companies for the alleged loss, and that the plaintiff agreed in writing to these terms.

The tickets issued by the defendant to the plaintiff contained a separate coupon for each railroad company over whose road she would pass en route, the defendant's road only extending from Memphis to Milan. Each coupon contained a memorandum that it was issued by the defendant, the name of the railroad company owning that part of the line, and the names of the places at which that part of the line commenced

and ended.    The coupons did not purport on their face to be issued by the several companies, nor were they signed with any name.    The only signature was that of the general ticket agent at the end of the last coupon.    The check given for the baggage was the usual metal check.

The judgment rendered was for the full amount claimed without deduction.

It is well settled that a railroad company, as a common carrier, may contract to carry to a point beyond the terminus of its own line so as to become liable for its delivery at that point, and that the liability thus attaching at the commencement will continue throughout the whole transit, all connecting lines of carriers employed in furthering and completing such transportation becoming its agents, for whose defaults it is responsible: *Railroad.* v. *Stockard*, 11 Heis., 568; Hutch. on Carriers, sec. 145.    But the courts are not in accord as to what will, *prima facie*, constitute such a contract.

In England the courts from the first adopted the rule, to which they have firmly adhered, that where a railroad company, as a common carrier, receives goods directed to a place beyond the terminus of its own line, without limiting its responsibility by express agreement, such receipt of the goods, so directed, is *prima facie* evidence of an undertaking to carry the goods to the place to which they are directed, and all connecting railroad companies or other carriers along the route are merely the agents of the first company. The latter is alone subject to' suit for any loss or

damage to the goods, the other companies not being responsible to the owner for want of privity of contract: *Muschamp* v. *Railway Co.*, 8 M. & W., 421. The same rule has been applied to a through contract for the carriage of a passenger and his baggage: *Mytton* v. *Railway Co.*, 4 H. & N., 415.

The rule, founded as it is on common law principles, has much to recommend it by reason of its uniformity and simplicity, and has been found to work well for the comparatively short distances of carriage in the British island. It has been followed by the courts of a number of States in this country, but modified generally so as to give an action against the carrying company actually guilty of the wrong out of which the cause of action arises, although not the original contracting company. All of the American courts, perhaps, except it may be of Georgia, concur in adopting the English rule, with the modification suggested wherever the contract is clearly a through contract, or the circumstances show that the contracting company has an interest, as partner or otherwise, in the entire route: Hutch. on Carriers, sec. 160. The courts of the State of Georgia seem to have adopted the English rule without qualification. Many of the State courts have been led to modify the rule not only in allowing the actually defaulting carrier, other than the first, to be sued, but in the matter of the *prima facie* evidence of a through contract and the burden of proof. The reason of the latter modification may, probably, be found in the greater distances of carriage in this country and the larger number

Railroad *v*. Weaver.

of connecting lines. Another cause for the change of the burden of proof may be also found in the form of through ticket, known as the coupon ticket, used by our roads.

The question has been before this court on several occasions. In the earliest of the cases, the suit was brought by a passenger against the first carrier for the failure of the second carrier to comply with the contract. The defendants sold to the plaintiff a through ticket from Nashville to Memphis. The defendants were the proprietors of a stage line for the first part of the route. Another company owned the residue of the stage line to the point where it connected with the Memphis & Charleston Railroad, which ran thence to Memphis. By an arrangement between these three parties, it was agreed that passengers might pay the whole fare at either end of the line, and receive a through ticket. There was no proof to show that the plaintiff knew of the arrangement between the carriers. "We think," says Harris, J., who delivers the opinion of the court, "that when the defendants received the plaintiff's money and gave him a through ticket, they thereby became bound for his transportation on the entire line, and that he was entitled to a strict performance by the defendants of their undertaking, or to recover compensation in damages for any breach thereof. The arrangement between the defendants and the proprietors of other portions of the line was a matter with which the plaintiff had nothing to do. He was no party to that agreement, nor was he bound to look to any person for the performance of the defendants'

undertaking but themselves. If either party was guilty of a breach, that was a matter for adjustment between themselves. By the arrangement, the proprietors at each end of the line were authorized to receive the fare and give through tickets to show that they had undertaken and received pay for the transportation of the passenger over the entire line, and the proprietors of the other portions of the line were their agents, whom they trusted to perform that part of the contract which lay on that portion of the line owned by them. If this view of the subject be correct, and we think it is, then it was wholly immaterial whether the plaintiff knew of this arrangement or not. If the defendants, when they sold plaintiff the ticket, intended that he should risk the proprietors of the other portions of the line to carry him through, then they should have so stipulated, and informed him frankly of this arrangement, so that he might, with full knowledge of the facts, have elected whether he would pay the entire fare and take through tickets, or pay them only for that portion of the line of which they were the proprietors, and make his own arrangements for the balance of the journey. They assumed, however, to carry him through, and are responsible for the undertaking": *Carter* v. *Peck*, 4 Sneed, 203.

In the case of the *East Tenn. & Va. R. R. Co.* v. *Nelson*, 1 Cold., 276, the suit was for the failure on the part of the railroad company to transport wheat, shipped to New York, in due time, under a special contract. "If," say the court, "the carrier, or his servant within the scope of his employment, enter into

any special contract to deliver in any particular time and place, even beyond the terminus of his particular route, it will be binding."

In the case of the *East Tenn. & Va. R. R. Co.* v. *Rogers*, 6 Heis., 143, the plaintiff shipped freight at Chattanooga to Atlanta, Georgia, taking a receipt from the defendant of the delivery of the articles "to be forwarded" by the East Tennessee and Georgia railroad, subject to freight and the regulations of the company. The articles, consisting of provisions, were spoiled and rendered valueless by the negligent detention of the agents of a connecting road. A recovery against the first company was sustained. Judge Freeman, who delivers the opinion of the court, notices the conflict between the English and American rulings, and cites the previous decisions of this court. "These cases," he says, "follow the principles of the English decisions, and we think lay down the sounder doctrine on the subject." The rule adopted is that a carrier, by simply taking charge of goods delivered to him for carriage, marked and destined to a particular place beyond the terminus of his own road, without an express limitation of his responsibility, and *a fortiori* if he undertakes in terms to deliver, which is the meaning of the words "to be forwarded," is bound to deliver at the place in due time. "It would," adds the judge, "seriously incommode the business of the country if, when property is shipped by one road and must pass over more than this road in order to reach its destination, the shipper, in case of injury to his goods, is to enquire how many routes, and how many

different companies make up the line between the place
of shipment and delivery, or to determine at his peril
which company is. liable for the injury."

In the subsequent case at the same term of the
*Western & Atlantic R. R. Co.* v. *McElwee*, 6 Heis., 208,
the charge of the trial judge in accordance with the
rulings in the previous cases was sustained.    Judge
Freeman, who delivers the opinion of the court, again
reviews the conflicting decisions, and after expressing
the opinion that the tendency of the later American
rulings is in favor of the English rule, adds that the
case of *Carter* v. *Peck* "is an emphatic endorsement of
the English rule, and is the proper one in all such
cases."

The next case in our reports raised the question
of the liability of an intermediate carrier to deliver
goods promptly to the next carrier.    The goods had
been shipped at Philadelphia on the Pennsylvania Cen-
tral railroad directed to Linton, Kentucky, under a
contract which limited the Pennsylvania company to
the terminus of its road, "and the proof indicated that
the liability of the delinquent road, the Louisville and
Nashville railroad, was to be governed by the same
contract."    Judge McFarland, who delivered the opin-
ion of the court, refers to the two preceding cases as
then recently decided, and as holding. "that where
there are two connecting lines of railway, and one
road receives goods for transportation, marked and con-
signed to a point beyond the terminus of its own road,
but on the line of the connecting road, the road first
receiving the goods will be held liable for their de-

livery at their destination, unless this liability is limited by express contract." "These cases," he adds, "somewhat change the rule followed by perhaps a majority of the American cases, and follow the English rule:" *Louisville & Nashville R. R. Co.* v. *Campbell*, 7 Heis., 253.

Shortly afterwards, this court heard and disposed of the case of *Furstenheim* v. *Memphis & Ohio R. R. Co.*, 9 Heis., 238. The plaintiff bought from the Pennsylvania Railroad Company in New York a through coupon ticket from New York to Memphis. He received metallic checks for his baggage calling for Memphis. His coupon ticket was recognized and the coupons taken up by the railroad companies along the route. The proof tended to show that the breaking into the baggage and loss of contents, for which the suit was brought, occurred on the Pennsylvania road. The suit was against the last carrier. Nicholson, C. J., in delivering the opinion of the court, undertakes to discuss the legal import and extent of the contract between the plaintiff and the Pennsylvania Company, concluding thus: "All we have before us is the simple fact that the Pennsylvania Central Company sold plaintiff tickets which were recognized as good along the whole line, and which carried him to Memphis. Without other facts and circumstances proven, we are bound to hold that the Pennsylvania Central Company undertook for itself to transport plaintiff and his baggage to Memphis, and that as there is no privity shown between plaintiff and the defendants, the latter cannot be held responsible for the loss shown to have occurred

before the baggage reached their road." This conclusion, it will be observed, is also in accord with the English rule, in so far as it requires privity of the contract to sustain an action against any of the carriers other than the one in default.

Afterwards, the direct question of the liability of the intermediate carrier of freight for his own default was raised. A lot of fruit trees was shipped in North Carolina, directed to the plaintiff at Jackson, Tennessee, which the defendant, the Memphis & Charleston Railroad Company, received from a preceding carrier, and failed to deliver to the succeeding carrier because the latter refused to pay the accrued freights. The trial judge instructed the jury that if the defendant received the packages, directed to the plaintiff at Jackson, Tenn., without any special contract limiting their undertaking, the law imposed upon the company the obligation to deliver the goods at their destination, and they would not be excused by the facts relied on. "This," says Judge McFarland, delivering the opinion of the court, "is in accord with the cases recently decided by the court of *Western & Atlantic R. R. Co.* v. *McElwee & Co.* In these cases the question was fully discussed, and need not be again examined": *Railroad* v. *Stockard*, 11 Heis., 568.

The question again came before the court at the April term, 1877, at this place. Goods were shipped at Cincinnati, packed in boxes or cases, directed to the plaintiffs at Somerville, Tenn., and delivered to the Louisville, Cincinnati and Lexington Railroad Company. This company gave a receipt, specifying that the goods

were to be transported, and delivered to the Louisville and Nashville Railroad Company at Louisville, subject to certain conditions noted. One of the conditions was that the liability of the company should terminate upon the delivery of the goods to the next line of transportation. The defendant was the last carrier in the line. The boxes were delivered by the defendant to the plaintiff, who, upon opening them, discovered that some of the goods were missing. It was admitted "that the goods were lost somewhere between Cincinnati and Somerville, but where is not known." It was agreed, upon the authority of Furstenheim's case, that the action could not be maintained because there was no privity of contract between plaintiffs and defendant. But it was held that the reason only applied where the loss sued for occurred upon the line of the company with whom the contract was made, and that there was no intimation in Furstenheim's case that an action might not have been maintained against the last company for its own default. And it was expressly held that upon the delivery of the goods to the defendant, it became liable for them as a common carrier, subject at most only to the limitations stipulated for on its behalf by the first company. The judgment against the defendant was sustained upon the ground that the defendant admitted the receipt of the goods without objection, and that it was impossible for the plaintiffs to show where the loss occurred. "Upon grounds of public policy," says McFarland, J., in delivering the opinion, "it is better to put upon the carrier the duty of tracing up the loss, and fixing it

upon the party first liable, than to put the duty on the owner": *M. & C. R. Co.* v. *Holloway*, 9 Baxt., 188.

All of the foregoing cases recognize the English rule upon the receipt of freight by a carrier directed to a point beyond its terminus, without any limitation upon its liability, but modify it, in accordance with the great weight of American authority, so as to sustain an action against any carrier on the line for its own default. And by the last case it is determined that any carrier in the line is in default, and may be sued for a loss, where the carrier has received the packages or boxes containing the goods without objection. The case of *Carter* v. *Peck*, the only one which relates to the personal rights of a passenger, and Furstenheim's case, the only one relating to the baggage of a passenger, both follow the English rule. A through ticket, without more, would *prima facie* render the first carrier liable upon the contract for the default of the other carriers in the line of transportation in the case of passengers and their baggage, as in the case of the shipment of goods. A through contract as to the passenger will be a through contract as to his baggage, in the absence of a different arrangement. But, as in the case of goods, although the first carrier may contract and be responsible for the entire transportation, any subsequent and auxiliary carrier to whose fault it can be traced will be liable to the owner for the loss of his baggage: Hutch. on Car., sec. 715. The courts of several of the States concur in holding the first company liable for the loss of baggage in the case of a through ticket: *Illinois Central R. Co.* v.

*Copeland,* 24 Ill., 332; *Candee* v. *Penn. R. Co.,* 21 Wis., 582; *Wilson* v. *Railroad,* 21 Grat., 654; *Burnell* v. *N. Y. Central R. Co.,* 45 N. Y., 184. But the check for the baggage may be given by one company for part of the line when the passenger has a through ticket from another company, in which case the former will be liable for the loss: *McCormick* v. *Hudson River R. Co.,* 4 E. D. Smith, 181; *Straiton* v. *N. Y. & N. H. R. Co.,* 2 E. D. Smith, 184. So, no doubt, the check may, as in the case before us, be issued with the ticket but for only part of the way. In such a case, the check may be considered as standing in the place of a bill of lading for the distance called for, and imposes the duty to carry and deliver accordingly: *Dill* v. *S. C. Ry. Co.,* 7 Rich., 158; *Wilson* v. *Chesapeake R. Co.,* 21 Gratt., 654.

It is conceded by the learned counsel of the plaintiff in error in the case before us that, by our decisions as given above, the whole liability in regard to passengers, baggage and freight, is thrown upon the company issuing the ticket or bill of lading, except where an express stipulation to the contrary is shown. But he insists that the rule was changed by *Holloway's* case, 9 Baxt., 188, and *Sprayberry's* case, 9 Heis., 852, S. C. 8 Baxt., 341. But Holloway's case, as we have seen, only extends the modification of the English rule, by which the American courts allow an action against the actual defaulting carrier in addition to the first carrier, so as to give the action against any of the carrying companies shown to have received the goods without objection, where it is impossible for the plain-

tiff to show in what part of the route the loss occurred. And in Sprayberry's case, the court, while exonerating the first carrier from liability for the loss of life of a passenger by the negligence of another carrier on the line under the circumstances, decided nothing in regard to the liability for the loss of the baggage, remarking that there were authorities holding that a different rule applied to passengers from the rule applicable to freight and baggage: *Nashville and Chat. R. Co.* v. *Sprayberry*, 9 Heis., 857. In that case, Sprayberry purchased from an agent of the Nashville & Chattanooga Railroad Company at Chattanooga tickets for himself, wife and two children, from that place to Shreveport, Louisiana. The tickets were coupon tickets, and indicated the route to be by the Nashville & Chattanooga road to Nashville, and by other connecting roads to Memphis, and from that point to Shreveport by steamboat. While *en route* on the Mississippi river, and in the State of Mississippi, an accident occurred by which the wife and children were drowned. It appeared in proof that the different lines of road were separate and distinct, owned and controlled by different agents and officers, and that there was no contract or privity between them in regard to carrying passengers except the arrangement to sell through tickets. Under these circumstances, the court held that the first company was not liable to the husband for the damages given to him by a statute of the State of Mississippi for the loss of his wife and children through the fault of the steamboat company. "We are of opinion," says the court, "that in

such cases the company selling the ticket shall be regarded as the agent of the other lines, *when the tickets themselves import this,* and nothing else appears."

· The form of the tickets is not given, but the language of the opinion fairly implies that they showed upon their face the agency of the issuing company, which might be either in words or by each coupon purporting to be the ticket of the company over whose connecting line it was to be used. Such was the form of the ticket in *Milnor* v. *New Haven R. Co.*, 53 N. Y., 363. The plaintiff bought from the defendant a ticket of two coupons to Sheffield, and received a through check for his trunk. Each coupon purported to be the ticket of one of the two companies over whose roads the passenger was to travel, containing the name of the company, and being signed by different officers. In such a case, each coupon may well be treated as the separate ticket of a company issued by the selling company as agent. In the case before us, the ticket, it will be remembered, is in form the ticket of the defendant, the coupons only designating the company over whose road the particular coupon was to be used, and the termini of the route. If, as suggested by the learned counsel of the plaintiff in error, the presumption of law for or against the first company arises from the form of the ticket, we cannot say that the form adopted, although with coupons, shows it to be anything more than the ticket of the issuing company. It is substantially like the ticket, with three coupons for three several companies, in *Hart* v. *Rensellaer & Saratoga R. Co.*, 8 N. Y., 37,

where the baggage of the passenger was checked through, and the defendant held liable for its loss as the company issuing the ticket and receiving the baggage, although owning the last road on the route.

The weight of American authority undoubtedly is that one carrier may sell to a passenger its own ticket, and at the same time the ticket of connecting lines, entitling· the passenger to through transportation over all the lines, and may receive the fare for the whole distance, without becoming responsible for the carriage of the passenger beyond its line. The tickets for the several lines are in such cases known as coupon tickets, and each ticket, apparently without reference to the form, being considered as the separate contract of the carrier over whose route it entitles the holder to be· carried. The presumption is that the carrier who sells the tickets, nothing else appearing, sells them as the agent of the other lines, and the coupons are regarded and treated as the contracts of the respective carriers, precisely as if they had been sold by the carrers themselves instead of by the common agent: Hutch. on Car., sec. 152, and note. Even in this view, it would not follow that the liability of the carriers for the passenger's baggage would be the same, or governed by the same rule as the liability for the passenger. The reason is obvious. There can never be any doubt as to the carrier by whose fault the passenger is injured, or the personal contract with him violated. While, on the other hand, there may be the same difficulty in ascertaining the carrier at fault in regard to baggage as in the case of ordinary freight. We

are of opinion, therefore, that the carrier contracting to carry the baggage of a passenger by checking it to a given point becomes liable by the contract for its safe carriage, in the same way and to the same extent as the carrier of goods. The check is in legal effect a bill of lading for the baggage.

In this view, upon the finding of the trial judge that the loss occurred before reaching Omaha, the defendant became liable to the plaintiff for the value of the property taken from the trunks of the plaintiff. It is equally clear that the Union and Central Pacific Railroad Companies, whose roads lay beyond Omaha, were not liable to the plaintiff for the loss, nor in any way in default. Not being co-wrongdoers with the defendant, no payment made by them to the plaintiff, and no release, in consideration of such payment, made by the plaintiff to them, could operate as a release of the liability of the defendant. And the transaction can only be treated as the compromise of a possible litigation, or as a mere gratuity. It would meet the abstract equity of the case to give the defendant the benefit of a credit for the value of the deduction on the return tickets over the roads of those companies, but no principle has been suggested by counsel, or occurred to us, upon which the allowance can be made.

There is no error in the judgment, and it must be affirmed.