SOUTHEASTERN EXPRESS CO. et al. v. FRY PRODUCE CO.

Eastern Section.  September 25, 1925.

No petition for certiorari was filed.

1. **Carriers.  Evidence.  Where shipper shows goods delivered in good condition burden is on the carrier to show that damage was not due to its negligence.**

When property has been delivered in good condition to a carrier, nothing else appearing, the necessary presumption is that there has been negligence on the part of the carrier; and the inevitable legal conclusion is that the burden is cast upon the carrier to remove this presumption.

2. **Carriers.  Initial carrier is liable for all damages.**

Under the Carmack Amendment the initial carrier is liable to the shipper for all damages whether sustained while in its possession or in the possession of a connecting carrier.

3. **Carriers.  Under Carmack Amendment shipper is not bound to sue initial carrier alone.**

The plaintiff is not bound to sue the initial carrier alone to gain the benefit of the Carmack Amendment which places liability for the entire loss upon the initial carrier.

4. **Carriers. Evidence. Initial carriers re-routing shipment has burden to show shipment delivered to connecting carrier in good condition.**
   Where the initial carrier in violation of the shipper's orders routes the shipment in another way, the burden is placed upon it to show that the shipment was delivered to a connecting carrier in good condition and failing to do so, the presumption is that the damage is on the line of the initial carrier.

5. **Trial. Instructions. Instruction on burden of proof of initial carrier held good.**
   In an action to recover for damages to a shipment of poultry where the shipper sued the initial and delivering carrier jointly and an instruction was given on the part of delivering carrier to the effect that if the initial carrier routed the shipment contrary to the orders of the shipper the burden of proof was on it to show that the shipment was delivered to the delivering carrier in good condition, held good.

Appeal in Error from Circuit Court, Greene County; Hon. D. A. Vines, Judge.

Affirmed.

Roscoe Word of Knoxville and Susong, Susong & Parvin of Greeneville, for S. E. Exp. Co.

Cox & Taylor of Johnson City, for American Express Co., plaintiff in error.

J. E. Biddle, of Greeneville, for defendant in error.

PORTRUM, J. This case reaches this court for the second time on appeal, at the first hearing the case was reversed and remanded because of an error of the trial judge in peremptorily instructing the jury in favor of the plaintiff below. The case was retried and a verdict rendered in favor of the plaintiff, and also one of the defendants, the American Railway Express Company. The defendant Southeastern Express Company appealed from the judgment rendered against it but, failing to file its appeal bond within the time granted, it is filed with the record for writ of error.

In its motion for new trial it set out two grounds of error which were overruled by the trial judge and the two grounds are assigned as error in this court; the first is: "There is no proof to support the verdict against the defendant Southeastern Express Company."

The Fry Produce Company has for many years been engaged in the produce business at Greeneville, Tennessee, and a part of its business is slaughtering and dressing fowl to be iced and shipped in barrels over the express lines serving Greeneville. It shipped its produce to eastern markets, which included the market at Baltimore, Maryland, and it was its custom to route its shipments from Greeneville via Bristol and Washington to Baltimore, the ordinary run consuming about twenty-four hours. In preparing its shipments the fowls were slaughtered, throughly cooled before packing by a process detailed, and then packed by laying a layer of ice and a layer of fowl and by placing a larger quantity of ice in the top of the barrel to replenish the wastage of the melting ice below by the gradual

sinking of the ice from above. It is shown that when the fowl were properly packed in the barrels, the meat would be preserved without deterioration for the time required to ship them to Baltimore by way of Bristol, which was about twenty-four hours.

On the 27th of May, 1921, the produce company received a wire from its representatives in Baltimore requesting a shipment of ten barrels of dressed poultry, and on the 28th, about 4:30 in the afternoon, the company delivered to the Southeastern Express Company, at Greeneville, ten barrels of produce properly packed and iced, and in time for the express shipment on train No. 42, which arrives in Greeneville soon after the time of delivery. The company requested and directed that said shipment be sent forward on No. "42," by way of Bristol, but the express agent refused to route them through Bristol, stating, as shown by the proof of the plaintiff, and as is borne out by the other circumstances, that the express company's line only went to Bristol, whereas by routing them by Morriston, Knoxville and Salsberry, his company would get the haul into Washington City. He probably stated at the time, as another reason, that his company's cars did not go through Bristol and the shipment would have to be laid over between trains in order to make the delivery to the American Express Company. The produce company then suggested that it would return the poultry to its cold storage plant and hold it for the local which arrived in Bristol in time for the transfer to another train of the  Norfolk & Western Railway, used by the American Express Company, and thereby avoid delay and secure a direct shipment. The express agent said that this method would not aid the matter any, because he was directed to ship it over the long haul by way of Knoxville regardless of when it was delivered, and it was his purpose to so ship it regardless of the wishes or direction of the shipper. The shipment was left with him and was shipped southwest and in an opposite direction from its destination to the City of Knoxville, and from there back in the same direction by way of Morriston to Asheville, Salsberry and to Washington City. It was received in Washington and delivered to the American Express Company at 10:50 A. M., May the 30th, after a lapse of forty-three hours. The shipment then was moved to the city of Baltimore and delivered to the consignee on the morning of May the 31st, and upon examination the fowl were found to be under a high state of decomposition, and were valueless for food.

This suit was instituted by the produce company against the initial and the connecting carrier for the damages sustained by the delay in shipment and the wrongful routing of the shipment. The plaintiff proved that the shipment was delivered to the initial carrier, the Southeastern Express Company, at Greeneville, at 4:30 P. M., 1921, properly packed and iced for the journey to its destination; that the

time ordinarily required was about twenty-four hours, and that the shipment was delivered in the city of Baltimore May the 31st, after a' lapse of more than fifty hours, and in a damaged condition, the plaintiff's damage being shown and no question is made as to the amount. The plaintiff made out its case against the carrier and there is material evidence to support the verdict. The rule in Tennessee of the liability of a common carrier, among which is included express companies, is as follows:

"The most that can be required of a shipper is that he shall deliver his goods to the carrier in good condition, properly packed or prepared for shipment. From that time forward they are committed to the custody and management of the carriers—the initial and connecting ones. In the nature of things, he can know nothing of their management of the business, while they—each of them as to its own relation to the matter—cannot, by means of their agents, fail to know all of the facts. It is nothing more than reasonable, therefore, that each, when sued for injury to the property, should be required to show that it has discharged its duty in respect thereto in the care of the property during transportation, and until delivery. When property has been delivered in good condition to a carrier, nothing else appearing, the necessary presumption is that there has been negligence on the part of the carrier; and the inevitable legal conclusion is that the burden is cast upon the carrier to remove this presumption." Railroad v. Naive, 144 Tenn., 264.

The liability of the initial carrier to the shipper is firmly established in this State without reference to whose line the damage to the shipment occurred on, to a point beyond the initial carrier's line. The connecting carriers are held to be the agents of the initial carrier. This is what is known as the English rule. The American rule, so-called because adopted and enforced by a large majority of the American courts, was otherwise; that is, the initial carrier was liable only for damage occurring on its line, notwithstanding the shipment was billed to a point beyond its line.

"All authorities are now agreed, we believe, in holding that the first of· a number of sucessive companies rendering service in the carriage of freight between distant points, may so bind itself to deliver goods beyond the terminus of its own line as to become responsible for their safe carriage through the entire journey; but with respect to what is necessary to constitute such a contract the English and American authorities are quite inharmonious. The English rule is that the receipt of goods marked for a given point, without a positive limitation of responsibility affords prima facie evidence of an undertaking on the part of the carrier to safely transport them to their destination, whether within or beyond the limits of its own line; while in America most of the courts regard each company as liable

in the common carrier capacity only for the extent of its own line, unless there be a special contract to the contrary. The latter may be stated to be the American rule, though some of the states, Tennessee among the number, have adopted the English rule as more consonant with sound reason and public policy. Schouler's Bailments and Carriers (Ed. 1887) secs. 593 to 598, inclusive; Lawson on Con. of Car., secs. 235 to 240, inclusive; Redfield on Carriers, secs. 190 and 197; Hutchinson on Car., sec. 145 to 149, inclusive, and secs, 151, 152; L. & N. R. R. Co. v. Campbell, 7 Heisk, 253; R. R. Co. v. Rogers, 6 Heisk., 143; R. R. Co. v. McElwee, Ib., 208; R. R. Co. v. Weaver, 9 Lea, 38." Transportation Co. v. Bloch Bros., 86 Tenn., 413-415, 415-416. See also L. & N. Ry. Co. v. Weaver, 77 Tenn., 38; R. R. v. Brewer & Co., 96 Tenn., 677; Express Co. v. Jackson, 92 Tenn., 325; Carriers, 10 C. J., sec. 481, p. 517, note Tennessee Cases, 54.

This conflict in decision growing out of the enforcement of the English and American rules in different jurisdictions was met and obviated by the passage of what is known as the Carmack Amendment by the Federal Congress. This amendment abolishes the American rule so far as interstate commerce is concerned, and expressly fixes liability upon the initial carrier. The reasons prompting the amendment are briefly stated as follows:

"(1) The expense incurred in an effort to establish the shipper's claim in a distant court, and (2) that, when goods were shipped over connecting lines, the rule which required a shipper sustaining loss to prove on which line it occurred frequently resulted in great hardship and sometimes in failure to recover, simply because the shipper could not produce evidence to show where the loss occurred."

The plaintiff in error was apprehensive of the rule as established by the Carmack Amendment and the pleader attempts to steer around this by drawing a distinction that because both carriers were sued in this case, then the case was not one falling within the Carmack Amendment. This insistence is not sound because the law in Tennessee prior to the Carmack Amendment fixed the liability on the initial carrier in the same manner that the Carmack Amendment does, and for the further reason the Carmack Amendment is not confined to a rule of procedure binding the plaintiff to elect to sue the initial carrier alone to gain the benefit of the statute, but establishes a positive liability on the initial carrier without reference upon whose lines the loss occurs. United States Compiled Statutes (West), sec. 8604A.

## II.

The second assignment of error reads:

"The court erred in granting the request made on behalf of the American Railway Express Company to charge the jury that,

if it should find Southeastern Express Company sent the said shipment of poultry via Knoxville in violation of the shipping instructions by the shipper, the burden of proof was on it to show that the said shipment was not damaged by reason of the misrouting at the time it was delivered to the American Express Company.''

It is insisted that this charge was erroneous because ''when goods are delivered to the first carrier in good order and are afterwards injured, the presumption indulged at common law, in the absence of anything to the contrary, is that they are injured by the last carrier.'' In support of this statement the pleader cites Elliott on Railroads, Vol. 4, paragraph 2190, and Transportation Co. v. Block Bros., 86 Tenn., 416. This is a correct statement of the rule when the shipper sues the ultimate or delivering carrier, and proves the shipment was delivered to the initial carrier in good condition and delivered by the delivering carrier in bad condition, burden is then on the delivering carrier to rebut the presumption that the damage occurred on its line and when rebutted it is relieved of liability. But it cannot be seen how this inquiry is material in the instant case, nor how the instructions conceding it to be erroneous is prejudicial to the Southeastern Express Company, its liability having been fully established. Its co-defendant below, the American Express Company, was dismissed and to this the Southeastern Express Company does not complain and its purpose in seeking a reversal on the error complained of is to obtain a dismissal, which in effect would nullify the Carmack Amendment; or if a new trial were granted the trial again between it and the shipper upon the same proof, which under the Carmack Amendment and law of this state establishes liability against plaintiff in error.

It is said that this charge denies to the Southeastern Express Company the common law presumption that the loss occurred on its co-defendant's line and that it is entitled to this presumption. The company cannot rely upon this error because it is immaterial from another standpoint, it got the benefit of the presumption for the proof showed that the poultry was properly re-iced in the city of Washington by the Southeastern Express Company about forty-three hours after receipt of shipment, and after properly re-icing them they were delivered to the American Express Company and it delivered them to the consignee within less than twenty-four hours, and from the proof, if the fowls were in sound condition at the time of the re-icing at Washington, they would have remained in sound condition until the date of the delivery to the consignee. The negligence on the part of the American Express Company is expressly negatived and the presumption is therefore overcome. This is not true as to the Southeastern Express Company, because it is not shown that the

poultry was re-iced before reaching Washington City more than forty hours after shipment and the condition of the poultry was not examined at the time of re-icing.   The only reasonable inference arising from their bad condition, is that the poultry was spoiled at the time of re-icing.

Referring again to the instruction complained of, had negligence been shown against the delivering carrier it would only have fixed a joint liability against it and the initial carrier which would not have relieved the initial carrier from liability as between it and the shipper. Railroad v. Cabinet Co., 104 Tenn., 580.

Each of the assignments of error is overruled and the judgment of the lower court is affirmed at the cost of the plaintiff in error and the sureties on its bond.

Snodgrass and Thompson, JJ., concur.