**RAILWAY EXPRESS AGENCY, Inc.**
v.
**SMITH.**
No. 11920.

United States Court of Appeals
Sixth Circuit.
April 15, 1954.

Charles C. Trabue, Jr., Nashville, Tenn. (William J. Harbison, Trabue & Sturdivant, Nashville, Tenn., Alston, Sibley, Miller, Spann & Shackelford, Atlanta, Ga., on the brief), for appellant.

James M. Swiggart, Nashville, Tenn. (Ward Hudgins, Nashville, Tenn., on the brief), for appellee.

Before ALLEN, MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The individual appellee, Mark J. Smith, recovered judgment in the United States District Court against the appellant carrier, Railway Express Agency, Inc., for damages resulting from the breakage in shipment from Nashville, Tennessee, to Lexington, Kentucky, of a matched pair of unique Meissen porcelain urns owned by him. Appellee had purchased these urns in Berlin, Germany, while he was serving there with the United States Army of Occupation. The articles had been made at a small but world famous factory in Meissen, Germany. The urns, which were around one hundred years old, had been made for presentation to King Albert of Austria and his Queen, Catherine of Saxony. On one of the urns had been painted a picture of the King and, on the other, a picture of the Queen. Except in this respect and in a few minor details, they were identical in size, conformation and configuration.

A declared value of $5,000 was placed upon the pair when appellee delivered them for shipment by railway express, and the carrier was paid an extra premium on the valuation. Previously, the urns had been displayed by appellee at a farm house near Columbia, Tennessee, where he was engaged in selling Meissen porcelain purchased by him in Germany. He testified that he had used the matched urns as a "drawing card" for his collection of porcelain, to see which he had charged the public an admission fee. He said that his purpose in shipping the King and Queen urns to Lexington had been to have them there as an attraction for an auction sale in which some of his own porcelain would be put up, along

with items owned by a "large estate." The urns had been delivered by appellee to Bond-Chadwell Warehouse Company in Nashville, with instructions to pack and ship them by railway express from Nashville to Lexington.

The manager of Bond-Chadwell testified that for more than forty years his company had been engaged in packing for shipment items of fragile nature. He said that he had personally supervised the packing of the urns in controversy, which had been wrapped in cotton, packed in excelsior and placed in cardboard drums. These drums had been put into slatted lumber crates, nailed around the outside of the drums. The witness stated positively that the urns were not broken when they were delivered to the appellant express agency.

Appellant has made the point that the warehouse company, as agent of the shipper, had not placed stickers upon the crates to indicate that they contained "fragile" goods. The point is not well taken; for the agency and appellee had entered into a special contract covering the shipment, wherein the very first provision, printed in enlarged emphasized type, thus described the character of the coverage: "Special contract for the transportation of carvings, ceramics (pottery and porcelain all kinds), Chinaware, cloisonne, champleve, glass half-tone screens, glass panels, carved or etched, glass photographic color plates, glass photographic negatives, glass photographic positives, glassware, N. O. S., jade ornaments other than jewelry, paintings, pastels, pictures, sculpture, statuary and wax figures, of a value of over $550.00." So, in executing and delivering its special contract *for an extra premium,* the express company had constructive knowledge that the goods shipped were fragile. The articles were described in the contract as "urns and tops" and were placed and packed in three separate crates.

Upon arrival in Lexington, Kentucky, the crates containing the urns were placed on the floor of the warehouse of the consignee in a place where they were out of the way of people moving about. They remained there for two or three days before being opened. Auctioneer Garland of Lexington, who, though not interested in the consignee firm, auctioned goods as their agent, testified that he was present when the urns were unpacked in the warehouse and that the base of one of the urns had been broken into half a dozen pieces; that the urn had been broken before the unpacking started; and that the urns had been properly and solidly packed, being wrapped in thick layers of cotton, padded paper and excelsior. He said further that the delay in opening the crates had been due to the fact that the express company had to be called three times in an effort to have its agent present when the crates were opened. He stated that no one touched the crates before a representative of the express company at last arrived for the opening and that the packages had not been moved in the interim. The warehouse worker who finally unpacked the crates had been for twenty years experienced in such work. The first urn unpacked was in good condition, except for small chipped pieces (this damage not alleged to have been received in shipment), but the other, packed in the same manner as the first, was broken as had been previously stated.

Defensively, the appellant introduced three witnesses, namely: its agent in charge at Nashville, its special agent who investigated loss and damage claims, and an interior decorator who deals in antiques as a sideline. The last mentioned witness testified only as to the probable value of the urns; and the Nashville agent discussed the special contract, the joint inspection report dated at Lexington, and the custom in respect to shipments of fragile commodities. His testimony did not develop any facts of moment concerning the shipment in controversy. The special investigator testified that he had visited the warehouse in Lexington after the crates had been opened. The purport of his testimony was to the effect that an

improper method of packing the articles had been employed and that the urns had not been carefully protected while in the consignee's warehouse.

■ Upon the foregoing review of the facts, we think it clear that there was substantial evidence to support the salient findings of fact of the district judge and that such findings were certainly not clearly erroneous to the effect that the urns had been properly packed for shipment on behalf of the appellee by the Bond-Chadwell Company of Nashville—long experienced in packing fragile material—and that the urns were delivered by that company to the appellant carrier in good and undamaged condition for transportation.

■ There is no dispute as to the breakage of one of the urns; and there is substantial evidence to support the award by the district court of $3,500 as damages occasioned to appellee from the breakage. Although the district judge, upon the conclusion of the trial, granted appellant's motion to strike the testimony of the appellee and the deposition of Bogaert as to the value of the urns, the testimony of Jack Norman and R. L. Garland was of sufficiently substantial character to support the trial court's finding upon the issue of value. The finding of the district judge is supported by substantial evidence and surely not clearly erroneous that the damage or breakage occurred while the urns were in possession of appellant. No satisfactory proof was adduced by the express agency to show that it was free of negligence in handling the fragile freight, or that the damage occurred without fault upon its part.

■ Upon careful analysis, there is actually no controversy as to the controlling applicable law. Indeed, appellant admits in its brief that, where the damage to a shipment occurs while the goods are in the exclusive possession and control of a carrier, it is often impossible for a shipper to prove specific acts of negligence; and that the facts surrounding the happening of an accident or the occurrence of damage are or should be known to the carrier, and are usually unknown to the shipper. Moreover, appellant states correctly that the law recognizes that an inference of negligence may be drawn, thereby shifting to the carrier the burden of going forward with the evidence when proof is adduced to the effect that (1) the shipment was in good condition and properly packed when received by the carrier, and (2) that it was damaged when the carrier delivered it to the consignee.

In Tennessee, which supplies the governing law of the instant case, it has been established for more than half a century that when property has been delivered in good condition to a carrier and has been damaged while in its possession (nothing else appearing), the necessary presumption is that the carrier has been negligent in handling the goods, leading to the inevitable legal conclusion that the burden is cast upon the carrier to remove this presumption. See Pennsylvania Railroad Co. v. Naive, 112 Tenn. 239, 264, 79 S.W. 124, 130, 64 L.R.A. 443. There, the Supreme Court of Tennessee, said: "The most that can be required of a shipper is that he shall deliver his goods to the carrier in good condition, properly packed or prepared for shipment. From that time forward they are committed to the custody and management of the carriers—the initial and connecting ones. In the nature of things, he can know nothing of their management of the business, while they —each of them as to its own relation to the matter—cannot, by means of their agents, fail to know all of the facts. It is nothing more than reasonable, therefore, that each, when sued for injury to the property, should be required to show that it has discharged its duty in respect thereto in the care of the property during transportation, and until delivery." This language was quoted by the Court of Appeals of Tennessee, Eastern Division, in Southeastern Express Co. v. Fry Produce Co., 2 Tenn.App. 37, 40.

In Sindle v. American Railway Express Company, 8 Tenn.App. 594, 605, the Court of Appeals (Middle Division of Tennessee) quoted from Ruling Case Law, that when goods "are damaged in the hands of the carrier a presumption arises that the damage was due to its negligence, and the burden of proof is upon it to show that it was free from negligence, or that notwithstanding its negligence, the damage occurred without its fault; that is, that its negligence did not contribute to the damage. Accordingly the mere proof of delivery of the goods to the carrier in good order, and of their arrival at the place of destination in bad order, makes out a prima facie case against the carrier, so that if no explanation is given as to how the injury occurred, the carrier may be held responsible."

The Court of Appeals of Tennessee for the Western Division, in Illinois Central R. Co. v. H. Rouw & Co., 1940, 25 Tenn. App. 475, 478, 159 S.W.2d 839, 841, in a scholarly opinion by Judge Anderson, said: "The general rule, subject to certain exceptions arising out of contractual exemptions, is that upon proof of the delivery of property to a carrier in good condition and delivery in bad condition to the consignee, a prima facie case of liability is made out in the sense that if there be no explanation at all as to the cause of the loss or damage, judgment against the carrier is warranted. Compare [Pennsylvania] Railroad Co. v. Naive, 112 Tenn. 239, 264, 79 S.W. 124, 64 L.R.A. 443."

In each of the four foregoing Tennessee opinions, one by the highest state court and one from each of the three sections of the Court of Appeals of Tennessee (the state's intermediate appellate court), the common carrier was held liable. The cases are, therefore, in point. The authorities from other states cited in the brief of appellant do not gainsay the principle of the Tennessee cases but each of them is plainly distinguishable upon its facts from the case at bar. In most of them, there was no proof that the articles, when placed in custody of the carrier, were in good condition; in the others, either there was no proof that the goods were delivered by the carrier to the consignee in damaged condition, or there was a complete absence of evidence that the damage occurred while the goods were in the possession of the carrier.

In the case at bar, the district court found upon substantial evidence that the urns, when delivered to the carrier, were in good condition but that when delivered to the consignee by the carrier one of the matched urns was badly damaged. The joint inspection report signed at Lexington by representatives of both the consignee and the carrier stated that the wing of the angel on one urn was broken and that the base of the other urn was broken. Moreover, this joint inspection report asserted that the articles were "wrapped in cotton batting—then packed in excelsior and shredded paper" and were "properly packed," though not marked to indicate contents.

The finding of fact of the district judge that the damage to the value of the pair of urns and consequently the loss suffered by appellee through the damage of breakage of one of them is $3,500 is supported by substantial evidence and is not clearly erroneous. There was adequate proof to establish the fact that, while the value of the two urns was $5,000 as a pair, the breakage of one would result in greater loss to appellee, inasmuch as the broken urn would become valueless and the unbroken one would be less valuable than when paired up with its mate. In porcelain, a widowed Queen is of less value than the wife of a living King.

The judgment of the district court awarding damages against the defendant-appellant in favor of the plaintiff-appellee in the amount of $3,500, plus interest at six per cent per annum from August 9, 1950, is affirmed.