**AMERICAN HOIST & DERRICK COMPANY, Plaintiff-Appellee,**

v.

**CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Third-Party Defendant-Appellant.**

No. 18668.

United States Court of Appeals Sixth Circuit.

July 29, 1969.

Harry P. Jeffrey, Dayton, Ohio, for appellant, James P. Reedy, Chicago, Ill., Iddings, Jeffrey & Donnelly, Dayton, Ohio, on brief.

F. Thomas Green, Dayton, Ohio, for appellee, Pickrel, Schaeffer & Ebeling, Dayton, Ohio, on brief.

Before PHILLIPS, EDWARDS, and McCREE, Circuit Judges.

PHILLIPS, Circuit Judge.

This action arose out of the derailment of a train in which a locomotive crane was destroyed. The parties are American Hoist and Derrick Company (American Hoist), manufacturer and seller of the crane; Price Brothers Company (Price), buyer of the crane; and Chicago, Milwaukee, St. Paul and Pacific Railroad Company (the railroad), transporter of the crane.

The litigation began with American Hoist suing Price on the contract of

sale. Price answered and brought in the railroad on a third-party complaint as the responsible party. The railroad counterclaimed against American Hoist for the entire damage sustained by the railroad in the derailment.

The jury returned a verdict in favor of American Hoist against the railroad in the sum of $111,463, with interest, and District Judge Carl A. Weinman rendered a judgment for this amount. The jury verdict was against the railroad on its counterclaim. The railroad appeals.

To summarize the action in further detail, American Hoist manufactured the crane and sold it to Price f.o.b. St. Paul, Minnesota. The crane was built as an integral unit, including its own railroad trucks composed of wheels, axles and motors, so that it could operate on railroad tracks. The purpose of this construction was to permit the crane to perform the functions for which it was built in its normal use and operation. It was designed so that the motors, which powered it while working, could be disengaged when the crane was transported as part of a train. Its boom and certain other parts were shipped on a separate railroad car along with the crane car.

American Hoist turned the crane over to the Chicago Great Western Railroad Company at St. Paul, Minnesota, for transportation to Dayton, Ohio. The Great Western, which was not made a party to this action, turned the crane and its accompanying car over to the defendant railroad at Dubuque, Iowa, on July 3, 1962. Approximately 43 miles from Dubuque, near Samoa, Iowa, the train in which the railroad was transporting the crane suffered a serious derailment.

The railroad refused to pay Price, holder of the bill of lading, for the destroyed crane, and Price refused to pay American Hoist. American Hoist thereupon sued Price on its contract. An answer was filed by Price, together with a third party complaint against the railroad based upon the contract of the common carrier. The counterclaim of the railroad against American Hoist alleged that the latter was liable for damages suffered by the railroad in the derailment on the theory of breach of warranty or of negligence in the manufacture of the crane. In its answer to the counterclaim American Hoist denied breach of warranty and negligence on its part.

The parties stipulated that the case would be tried on the issues joined between the railroad and American Hoist on the counterclaim. Pursuant to this stipulation, which was read to the jury, the case was tried with the railroad in the posture of plaintiff.

Two forms of verdict approved by counsel for the railroad and American Hoist, were submitted to the jury.

The District Judge instructed the jury as to the order in which it was to deal with the questions presented. First he instructed:

"Now, if you find as I have just indicated that there was a breach and that that breach of warranty was the proximate cause then you need not proceed any further with the consideration of the other question presented which is the question of negligence. However, if you find that there was no breach of warranty, then you shall proceed further to discuss the questions involved in the issue of negligence."

Subsequently he stated all the questions in order:

"On the breach of warranty you have two questions:

Was there an implied breach?

Was it the proximate cause?

"On the question of negligence you have three questions:

Was there negligence?

Was it the proximate cause?

Was the Railroad guilty of contributory negligence?

"Those are your questions."

I.

The railroad contends that the District Judge committed reversible error

in instructing the jury on contributory negligence. It is asserted that there was no evidence of contributory negligence to support the instruction, that in light of the instruction an addendum to the instructions was erroneous, and that the contributory negligence instruction required that the Court submit more than two verdict forms.

Contrary to the railroad's contention we find evidence in the record supporting the instruction on contributory negligence.

The crane car was marked with arrows indicating that it was to be pulled only in one direction. Testimony indicated that the reason for this was that pulling the crane car in the opposite direction, with the light end of the car forward, could result in derailment of the car and that the railroad was aware of this possibility. The crane was part of a two-car shipment with the other car carrying the crane boom. These cars customarily were shipped with the boom car attached to the light end or rear of the crane car so that in a train the crane car would be ahead of the boom car. After the wreck the position of the wrecked cars demonstrated that the boom car had been ahead of the crane car in the train. Photographs of the derailment scene show the crane car with its heavy end further from the tracks than the light end but with the light end further along in the direction of movement of the train when it had been on the tracks.

Neither the train crew nor any other person who had inspected the crane while in the railroad's possession prior to the derailment testified at the trial of this case. The jury could have concluded from the evidence that the railroad had been towing the crane car negligently in the opposite direction from that indicated by the markings on the car and that this contributed to causing or was the sole cause of the derailment.

Furthermore, the testimony of the railroad's experts was that a loose and crooked wheel on the crane car, which the railroad contended was the cause of the derailment, would have caused the car to wobble, to nose down, and to oscillate severely while moving down the track. There was testimony from railroad witnesses that loose wheels were a known cause of derailments for which railroads maintain a look-out. From this evidence the jury could have concluded that, if the wheel was as loose and crooked on the axle as the railroad attempted to show, the railroad was negligent in not detecting the wobbling, oscillating crane car as it pulled it in the daytime for a distance of approximately 43 miles, allegedly only eight cars behind the train engines, and that the failure to detect the defect contributed to the causation of the derailment.

■ Therefore we find that the Court was justified on the evidence in instructing the jury on contributory negligence.

The railroad alleges that even if the District Judge was correct in his instructions on contributory negligence, the Court erred in an addendum to its instructions. The following remarks are those complained of:

> "Remember on telling you the five questions that you would look into in this case, when I said what do you say ladies and gentlemen after a fair and impartial judgment, I wanted to add this particular question which really is the question that you must decide. Did American Hoist cause this derailment? If it did, your verdict is for the Railroad. Otherwise, it is for American Hoist."

The railroad's argument is that if the jury found both negligence and contributory negligence, American Hoist should not have recovered damages.

The fallacy of this argument is that it ignores that the basis of recovery by American Hoist through Price against the railroad. The parties stipulated that if the decision on the issues joined between the railroad and American Hoist on the counterclaim was against the railroad, judgment would be entered for American Hoist in the amount of its

claim in its action against Price, which was also the amount of Price's claim against the railroad. The logic behind the stipulation is clear in view of the railroad's liability to Price as a common carrier.

In Price's action against the railroad a prima facie case would be made out by showing the delivery of the crane in apparent good order and the fact and amount of damage. Under the Carmack amendment, 49 U.S.C. § 20(11) and (12), the carrier then would have the burden of proving both that the damage to the crane resulted from the allegedly defective wheel and that it was free from negligence in order to avoid liability to Price. Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134, 138, 84 S.Ct. 1142, 12 L.Ed.2d 194; Super Service Motor Freight Co., Inc. v. United States, 350 F.2d 541 (6th Cir.). What the railroad had to establish to avoid liability to Price was that the crane was the *sole* cause of its own destruction. In order to recover for its own damages the railroad on the counterclaim had also to prove that American Hoist caused the accident. Thus what the railroad had to prove to recover its damages was the same thing that it had to prove to avoid liability to Price, viz: that American Hoist caused the accident. Obviously had Price recovered from the railroad, American Hoist would have recovered from Price.

It follows that, contrary to the railroad's argument, if the jury found for American Hoist on the counterclaim only because of a finding of contributory negligence on the part of the railroad, the railroad would not be relieved of liability for the destruction of the crane. Only if the jury found that American Hoist was the sole cause of the derailment would the railroad be entitled to its damages and only if the jury so found would the railroad have avoided liability for the destruction of the crane.

■ We hold that the addendum to the instructions carried out the purpose of the stipulation and was correct.

The railroad further complains of the submission to the jury of only two verdict forms, one providing judgment for American Hoist in the amount of its claim and the other for the railroad in the amount of its damages. The forms were approved by counsel prior to submission to the jury but before the Court had instructed on contributory negligence. The two verdict forms were correct even after the instruction on contributory negligence for the same reasons stated above that the addendum to the charge was correct.

## II.

The railroad contends that two questions asked by counsel for American Hoist should have been excluded since they were prejudicial and dealt with collateral matters and for other reasons.

The first question to which the railroad objects was put to Martin Garelick, Superintendent of the Iowa Division of the railroad, who was testifying as an expert.

"Tell me how many of the 119 derailments that the Milwaukee had in 1962 were in the Iowa Division?"

There was no evidence that the railroad had experienced 119 derailments in 1962. The question was one of a series of questions designed to impugn the qualifications of the witness as an expert on derailments by showing lack of knowledge.

■ While the content of the question was undesirable and improper since there was no evidence of 119 derailments, we do not consider permitting the question to be answered to have been prejudicial. See VI Wigmore, Evidence § 1808 (3d ed., 1940).

The other question to which the railroad objects was put to Hugh D. Richardson, who testified as an expert for the railroad.

"Are you aware then for the year 1962 on the total railroads that there were some seventy-five major derailments reportedly resulting from the wheels being loose or out of gauge?"

There was no evidence that there had been 75 major derailments resulting from loose wheels. The question was one of a series in which American Hoist's counsel was attempting to establish that loose wheels were a danger of which the railroads were aware and in which he was also testing the general knowledge of the expert about derailments.

The question was objectionable for the same reason as the earlier question, but again we do not find prejudicial error in the exercise of the trial judge's discretion in permitting it.

It should be noted that both of these witnesses were testifying as experts on the cause of the derailment in question and were properly subject to testing of their knowledge about derailments.

### III.

 The railroad objects to two hypothetical questions which counsel for American Hoist posed to Dr. Thomas Manos, an expert in accident reconstruction testifying for American Hoist. The basis of the objection is a claim that the questions left out or mis-stated relevant facts. The key fact referred to by the railroad is the speed of the train.

The only evidence of the speed of the train was from Martin Garelick and was his conclusion on the basis of his investigation.

"An expert witness may not express his opinion based upon evidence * * * on the assumption that the facts supported thereby are true, where such evidence * * * consists of the opinions, inferences and conclusions of other witnesses." Zelenka v. Industrial Commission, 165 Ohio St. 587, 138 N.E.2d 667 (Syllabus). Accord, Taylor v. B. Heller and Company, 364 F.2d 608, 613 (6th Cir.).

Thus it would have been improper for American Hoist to have included in the hypothetical question the speed to which Garelick had testified.

We find nothing objectionable in either of the two questions, neither of

which went to the causation of the accident.

Other contentions made by the railroad have been considered and have been found to be without merit.

Affirmed.