**PLOUGH, INC., Plaintiff–Appellant,**

v.

**The MASON AND DIXON LINES, Defendant–Appellee.**

No. 78–1356.

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1980.

Decided Oct. 2, 1980.

---

Dale Woodall, Cobb, Edwards, Hamlet, Nichol & Woodall, Memphis, Tenn., William J. Augello, Augello & Pezold, Huntington, N. Y., for plaintiff–appellant.

John Paul Jones, Memphis, Tenn., for defendant–appellee.

Before LIVELY and BROWN, Circuit Judges; and PHILLIPS, Senior Circuit Judge.

LIVELY, Circuit Judge.

This case deals with the burden of proof in an action by a shipper for injury to goods transported by a motor carrier. Following a non–jury trial, the district court found that the carrier had met its burden of proving that the goods of the shipper had an "inherent vice" and that the carrier was free of negligence, but that the shipper had failed to prove that the carrier had transported the goods in a soiled or defective trailer. We conclude that the district court misallocated the burden of proof and, accordingly, we vacate the judgment and remand for further proceedings.

I.

Many of the facts were stipulated. The shipper, Plough, delivered two trailer loads—a total of 198,568 cans of Solarcaine spray to the Mason and Dixon Lines, Inc. (M–D) at Melford, Connecticut for transportation to Memphis, Tennessee. The cans of Solarcaine spray and their plastic caps were in apparent good condition when delivered to M–D. When the trailers arrived at Memphis the contents were inspected by Plough's quality control personnel. The plastic caps on the cans in the top two layers of shipping containers inside each trailer were found to be discolored. The Plough inspectors rejected both shipments. One of the trailers (No. 7413) was moved immediately after it was unloaded and it was never examined by Plough's employees. Before the second trailer (No. 7488) was unloaded, Plough inspectors found dirt inside the trailer, on its floor, sides and roof, which was similar to that found on the top two layers of Solarcaine cartons. A small hole was also found in the upper front end of trailer No. 7488. Plough shipped five loads of Solarcaine from Melford to Memphis in its own trailers at about the same time the M–D shipment was made. All seven loads were from the same lot. There were no soiled plastic caps in any of the loads carried in Plough's own trailers.

It was stipulated that the plastic caps on the aerosol cans of Solarcaine are conductors which may become charged with static electricity. When this occurs, the caps attract particles of dust and other contaminants from the air. The caps become discolored and unfit for commercial use if the atmosphere is sufficiently contaminated. During manufacture of the plastic caps used on the Plough product an antistatic agent was added to dissipate any electrostatic charge and thus prevent discoloration or other contamination.

Plough's inspectors ascribed the discoloration of the caps to "diesel smoke." There was evidence that the contamination in trailer No. 7488 was not diesel smoke, but general dust and dirt. The district court concluded from the presence of the hole and of excessive dust and dirt particles in the interior of trailer No. 7488 that "defendant has failed to establish its affirmative defenses with regard to damage occasioned to plaintiff's products." Concerning trailer No. 7413, M–D argued that the sole cause of the discoloration was the "inherent vice of the caps in that the antistatic agent used in them was ineffective." The district court found that no defect was noted in trailer No. 7413 comparable to the hole in No. 7488, and that there was no excessive dirt or dust inside it. Since it was conceded by Plough that an inherent characteristic of the plastic caps was the buildup of static electricity, the district court concluded that M–D should prevail on its affirmative defense of inherent vice with respect to Trailer No. 7413.

M–D did not appeal from the award of damages for the cost of cleaning the plastic caps on the Solarcaine cans carried in trailer No. 7488. However, Plough has appealed from the district court's denial of damages for the same costs incurred to bring the products transported in trailer No. 7413 up to commercial standards.

## II.

The 1906 Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11), makes common carriers liable "for any loss, damage or injury" caused by such carriers to property received by them for transportation. The Supreme Court has construed the Carmack Amendment as follows:

> [T]he statute codifies the common–law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods."

*Missouri Pacific R. R. v. Elmore & Stahl,* 377 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964) (citations omitted).

The Court dealt with the burden of proof in such cases as follows:

> Accordingly, under federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability.

*Id.* at 138, 84 S.Ct. at 1145 (citations omitted).

The district court appeared to recognize these standards in colloquy with counsel during the course of the trial. However, early in its memorandum opinion the court wrote:

> When a shipper makes out a prima facie case of damages, as here, an *inference* of negligence or fault on the part of the carrier may be drawn, thereby *shifting to the carrier the burden of going forward with the proof* that the shipment was not in good condition and properly packed when received by the carrier, and/or that it was not damaged by carrier's fault when delivered to the consignee. *Railway Express Agency v. Smith,* 212 F.2d 47 (6th Cir. 1954); *United States v. Central of Georgia Railway,* 411 F.Supp. 1023 (E.D.Tenn.1976).

(emphasis added).

In fact, the carrier's delivery of damaged goods which were in good condition when it received them created a presumption of negligence, not a mere inference. The burden which shifts to the carrier once a shipper makes out a prima facie case is not the burden of going forward with the evidence. It is the burden of proof which "shifts to the carrier and remains there." *Super Service Motor Freight Co. v. United States,* 350 F.2d 541, 543 (6th Cir. 1965). In order to avoid liability the carrier must then prove two things: that it was not negligent and

that the *sole* cause of the injury was one of the five exceptions listed in *Elmore & Stahl, supra. American Hoist & Derrick Co. v. Chicago, Milwaukee, St. Paul & Pacific R. R.*, 414 F.2d 68, 72 (6th Cir. 1969).

■ Though the evidence of the hole in the front and the excessive dirt inside trailer No. 7488 was relevant, it was not required in order for Plough to make out a prima facie case of liability. That was accomplished when the merchandise, undamaged when received by the carrier, was delivered to Plough in a damaged condition. In its order on motion for clarification the district court wrote:

> The Memorandum Opinion of the Court clearly granted recovery to plaintiff with regard to the shipment contained in Trailer # 7488, but found that as to Trailer # 7413, the defendant had met its burden of proving inherent vice and freedom from negligence, the plaintiff having failed to show, as to trailer # 7413, that defendant had negligently transported the goods in a soiled or defective trailer.

The district court erred in requiring Plough to produce similar evidence as to trailer No. 7413 as a prerequisite to recovery. Once Plough made its prima facie case, M–D could avoid liability only by proving both that it was free of negligence and that the inherent qualities of the goods were the sole cause of the damage.

The district court relied primarily on this court's decision in *Railway Express Agency, Inc. v. Smith*, 212 F.2d 47 (6th Cir. 1954), where the court referred to the burden of going forward with the evidence. However, that case provides no authority for a decision in the present one. In *Railway Express Agency, Inc. v. Smith*, Judge Martin stated that the decision was based on Tennessee law. There was no reference in the opinion to the Carmack Amendment or other federal law. The controlling decision in this circuit is *Super Service Motor Freight Co. v. United States, supra*, where we held the burden of proof remains with the carrier.

The other decision relied on by the district court, *United States v. Central Geor-*gia Ry.*, 411 F.Supp. 1023 (E.D.Tenn.1976), involved a claim of theft from a railway shipment. The court held that the presence of unbroken seals at each delivery point showed that the losses could have taken place only during unloading, an operation of the consignees, not the carrier. On this basis, the court held that the carrier rebutted the shipper's prima facie case of negligence thus discharging its burden of proof. *Central Georgia Ry.* offers no support for the approach adopted by the district court in the present case.

The judgment of the district court must be vacated for two deficiencies in the court's findings. At no point did the court find that the "inherent vice" of the product was the sole cause of the damage. Though the district court found that M–D was free of negligence, the language in the order on motion for clarification clearly appears to have placed the burden on the shipper to prove specific acts of negligence by the carrier. As Plough pointed out, its stipulation that the plastic caps were prone to build up static electricity did not relieve M–D of its two-fold burden of proving that the inherent quality of the caps was the sole cause of their discoloration and that the carrier did not create or permit an atmosphere within the trailer in which the static electricity led or contributed to this discoloration.

### III.

At oral argument counsel for M–D contended that this court should re-examine its holding in *Super Service Motor Freight Co. v. United States, supra*. We were urged to adopt the dissenting opinion in *Super Service* as the better reasoned interpretation of the Carmack Amendment. This court reaffirmed its adherence to the requirements of the *Super Service* majority in *American Hoist & Derrick, supra*. This is the settled law of the circuit.

■ Counsel for M–D also argued that Rule 301 of the Federal Rules of Evidence requires such a re-examination. Rule 301 provides:

> In all civil actions and proceedings not otherwise provided for by Act of Con-

gress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

It is immediately apparent that Rule 301 does not affect the burden of proof in Carmack Amendment cases. For well articulated reasons [1] Congress chose to place the burden of proof on a carrier in whose hands goods are damaged rather than on the shipper. This is more than a burden of going forward with the evidence. It is a true burden of proof in the sense of the risk of nonpersuasion and it remains on the carrier once the prima facie showing has been made.

The judgment of the district court is vacated and the cause is remanded for further consideration and findings in the light of this opinion.

---

1. A shipper has no control over goods once he delivers them to a carrier, and no opportunity to observe how they are handled. Without a rule akin to *res ipsa loquitur* the shipper would often have an intolerable task to prove negligence.