CASE WESTERN RESERVE UNIVERSITY, Appellant,

v.

YELLOW FREIGHT SYSTEM, INC., Appellee.

[Cite as *Case W. Res. Univ. v. Yellow Freight Sys., Inc.* (1993), 85 Ohio App.3d 6.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63322.

Decided Jan. 6, 1993.

*Kelley, McCann & Livingstone, Joel A. Makee* and *Donna L. Williams-Alexander,* for appellant.

*Reminger & Reminger Co., L.P.A., Lawrence Sutter* and *Richard Haber,* for appellee.

*Per Curiam.*

On April 30, 1991, plaintiff-appellant Case Western Reserve University filed a complaint against defendant-appellee Yellow Freight System, Inc.

In its complaint, appellant stated that in mid-December 1989, it retained the services of appellee, in order to transport by truck a Lexel Model 95 Ion Laser and Power Supply. Appellee was to transport the laser and power supply from the U.S. Army's Chemical Research, Development and Engineering Center in Aberdeen Proving Ground, Maryland, to Cleveland, Ohio.

Appellant further stated that on January 2, 1990, the laser and power supply were delivered to its premises by appellee. Appellant alleged that the cartons and their contents were damaged while they were in the care, custody and control of appellee.

Appellant further alleged that appellee's handling of its property was in violation of the Carmack Amendment set forth in Section 11707, Title 49, U.S.Code. Appellant also alleged negligence and a breach of contract.

On June 5, 1991, appellee filed its answer. Appellee basically denied the allegations raised in appellant's complaint.

On December 17, 1991, a jury trial commenced. The first witness to testify was Jude Kral, a mechanical engineer employed in appellant's Center for Complex Flow Measurements.

Kral testified that the laser and power supply were initially sent from Cleveland, Ohio, to Aberdeen Proving Ground, Maryland, in early December 1989, for some repairs. Under his supervision, the equipment was packed in the original manufacturer's shipping cartons. The laser was fitted with foam so it would not hit the sides of the carton, while the power supply was surrounded by some foam and additional packing material.

Kral stated that he went to Aberdeen Proving Ground, while the laser and power supply were being tested. While he was there, the equipment was in working condition. After the testing was done on the laser and power supply, Kral packed the equipment himself. When he did so, there was no damage whatsoever to any of the instruments.

Kral further testified that the laser and power supply were shipped back to Cleveland by appellee in the same shipping cartons. He stated that the cartons had labels that indicated that they contained delicate instruments and specified which side was up. The labels also said "Handle With Care."

On January 2, 1989, appellee delivered the cartons containing the laser and power supply to appellant's premises. Kral did not personally unload the truck, but he did speak to appellee's representative after the cartons were unloaded just outside the building. Kral learned that three attempts to deliver the equipment had previously been made.

Kral testified that before he pulled the laser and power supply into the building, he did not see any indication of damage to the cartons. Kral then pulled the equipment onto the freight elevator with a cart. He denied dropping the equipment or running into anything.

Kral said that by 5:00 p.m., they had put the cartons into the laboratory and then left for the evening. The cartons were then opened the following morning, and they discovered that there was extensive damage to the power supply. Kral also noticed that the laser had shifted within the carton and some of the foam had been ripped away.

Kral stated that appellee was immediately contacted about the damage to the laser and power supply. Subsequently, MTI Inspection Services was sent to appellant's premises to investigate the situation and take photographs. According to Kral, MTI Inspection Services was sent by appellee. Soon after the inspection of the damages, Kral filled out a claim form from appellee.

Kral claimed that it was less expensive to replace the power supply than to have it repaired. Thus, appellant purchased a new power supply and had some

repairs done for a total cost of $15,511.70. Appellee apparently rejected a claim in that amount.

The next witness to testify on behalf of appellant was Bernard Ferrencak. Ferrencak testified that he was a mechanical engineer and that in December 1989, he often worked with appellant's laser and power supply. He claimed that he worked with the equipment up until it was shipped to Aberdeen Proving Ground, and it was in working condition.

Ferrencak stated that he was not present in Maryland with the laser and power supply, but he was present at appellant's premises when appellee delivered the equipment on January 2, 1990. He helped appellee's representative Robert Maclin unload the cartons from the truck. According to Ferrencak, Maclin moved other boxes around the laser and power supply in a manner that made him feel uneasy.

Ferrencak further testified that he signed for the items. At no point did Maclin tell him to inspect the items before signing anything.

The cartons were then placed onto a metal cart, and Ferrencak and Kral subsequently rolled the cart to the laboratory. Ferrencak said that neither he nor Kral dropped the cartons.

The next morning, Ferrencak was present when Kral opened the cartons. Ferrencak noticed that the laser was "skewed" and the power supply was extensively damaged. Ferrencak testified that a casual view of the cartons did not indicate that the items contained therein were damaged.

Appellant then presented the testimony of Mark McElroy, an electrical engineering student who often worked with the laser and power supply. McElroy testified that prior to the equipment being shipped to Aberdeen Proving Ground, it was working properly.

McElroy further testified that he was present when the cartons were opened at appellant's premises, after they were returned from Maryland by appellee. When the cartons were opened, McElroy noticed that the power supply was "dented and bent in rather extreme ways." McElroy stated that he had no knowledge of anything that would indicate that one of appellant's employees caused the damage.

The last witness to testify for appellant was Alexander Dybbs, the codirector for appellant's Center for the Complex Flow Measurements. Dybbs said that prior to the laser and power supply being shipped to Aberdeen Proving Ground, he worked with the equipment without incident.

Dybbs further testified that he was not present when the laser and power supply cartons were opened on January 3, 1990. He never observed the

equipment in its damaged condition. He was only informed by someone about the situation.

According to Dybbs, in addition to the cost of repairs, appellant suffered additional losses due to inability to use the laser and power supply. The tests scheduled to be conducted after the equipment was returned had to be cancelled. Also, salaries had to be paid to employees even though the equipment was not operating.

Robert Maclin was the only witness to testify on behalf of appellee. Maclin testified that in January 1990, he was a "city delivery driver" with appellee for the city of Cleveland, Ohio. In January 1990, he was responsible for delivering freight in the area from East 105th Street and Euclid Avenue to Highland Heights. His region included appellant's location and all the adjacent hospitals.

With regard to the laser and power supply, Maclin stated that he attempted to deliver the equipment on December 22, 1989; however, no delivery was made, since no one was present at appellant's premises, and no one answered for the delivery by telephone.

After the delivery was unsuccessful on December 22, 1989, Maclin returned to appellee's terminal with his load, including the cartons containing the laser and power supply. Maclin stated that he did not unload and load his truck at appellee's terminal, but, apparently, the laser and power supply were unloaded on December 22, 1989 and stored on appellee's premises.

On January 2, 1990, the laser and power supply were put back onto Maclin's truck and he transported the load to appellant's premises. Maclin stated that he was met by Ferrencak and the two spoke for about five minutes. Maclin then entered the trailer and moved about fifty cartons, in order to get to the cartons containing the laser and power supply. The fifty cartons were filled with cotton balls.

Maclin and Ferrencak proceeded to unload the two cartons containing the laser and power supply. Maclin stated that he did not see any noticeable damage to the two cartons. Nor did Ferrencak or Kral make any comments about damage to the cartons. Maclin also stated that no one requested to open up the cartons, because there was no damage.

The jury subsequently returned a verdict in favor of appellee. The jury specifically found in its answers to interrogatories that appellant had failed to prove by a preponderance of the evidence that the damage was caused by appellee. On December 20, 1991, the trial court issued a journal entry adopting the jury's verdict.

On January 3, 1992, appellant filed a motion for judgment notwithstanding the verdict and/or for a new trial. Appellant basically argued that it had proved a

prima facie case under the Carmack Amendment set forth in Section 11707, Title 49, U.S.Code. Appellant further argued that appellee failed to sufficiently rebut that prima facie case.

On January 28, 1992, the trial court denied appellant's motion for judgment notwithstanding the verdict and/or for a new trial. The trial court found that the "jury was fully instructed on the Carmack Amendment and that jury presumably follow [*sic*] the instructions."

Appellant filed a timely notice of appeal and subsequently raised the following assignments of error:

"I. One of the interrogatories read to the jury by the court misled and confused them as to plaintiff's burden of proof, creating prejudicial error to the detriment of the university.

"II. One of the interrogatories read by the court conflicted with other instructions on the burden of proof, which is prejudicial error.

"III. The jury verdict is against the manifest weight of the evidence."

In its first assignment of error, appellant argues that the trial court submitted an erroneous jury interrogatory that misled and confused the jury as to its burden of proof. Appellant contends that the trial court erred in providing the jury an interrogatory that read, "Do you find that the plaintiff has proved by a preponderance of the evidence that the damage was caused by the defendant, Yellow Freight Systems?"

In an action brought under the Carmack Amendment to the Interstate Commerce Act, Section 11707, Title 49, U.S.Code, a prima facie case of carrier liability is established when the complaining party can show delivery to the carrier in good condition, arrival in damaged condition, and the amount of damages. *Missouri Pacific RR. Co. v. Elmore & Stahl* (1964), 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194. Thereupon, the burden of proof is upon the carrier to show both that it was not negligent and that the damage was due to one of the excepted causes relieving the carrier of liability. *Id.* at 137, 84 S.Ct. at 1144, 12 L.Ed.2d at 197.

A carrier will not be liable if it can show that the damage was caused by "a) the act of God; b) the public enemy; c) the act of the shipper himself; d) public authority; e) or the inherent vice or nature of the goods." *Id.*

A review of the above standard set forth in *Missouri Pacific RR. Co., supra,* demonstrates that the standard clearly places a heavy burden of persuasion on a carrier.

However, in the instant case, the trial court placed a heavy burden on appellant in Interrogatory Number Two. The jury was asked whether it found that appellant proved, by a preponderance of the evidence, that appellee caused the damage.

We find that Interrogatory Number Two was inconsistent with the law regarding the burden of proof in cases involving an alleged violation of the Carmack Amendment. The complaining party does not have to prove that the carrier caused the damage to the goods. It need only prove that the goods were delivered to the carrier in good condition, the goods arrived in damaged condition, and the amount of damages. See *Plough, Inc. v. Mason & Dixon Lines, Inc.* (C.A.6, 1980), 630 F.2d 468; see, also, *Blum v. S & H Contractors* (Aug. 11, 1988), Carroll App. No. 543, unreported, 1988 WL 85111.

Pursuant to Civ.R. 49(B), only interrogatories that are dispositive of determinative or ultimate issues must be submitted by the trial court. *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 71 O.O.2d 164, 327 N.E.2d 645.

We conclude that the trial court's Interrogatory Number Two regarding appellant's burden of proof was both misleading and erroneous.

Appellant's first assignment of error has merit and is sustained.

■ In its second assignment of error, appellant argues that the trial court erred in its instructions to the jury. Specifically, appellant asserts that the trial court erroneously charged the jury on its burden of proof.

A review of the entire jury charge indicates that the jury was erroneously instructed. Although the trial court, in part, does properly state the law regarding burden of proof, its jury instructions were unclear and misleading. For instance, the jury was instructed as follows:

"In other words, that it was in damaged condition when Case Western Reserve University received it from Yellow Freight Systems. And then the plaintiff must also prove that the amount in dollars of its loss was caused by Yellow Freight Systems, if you find that Yellow Freight Systems did cause damage."

This portion of the trial court's instructions to the jury requires appellant to prove that the damage was caused by appellee. As mentioned earlier, in order for appellant to prove a prima facie case under the Carmack Amendment, it was not required to prove that appellee caused the damage.

We conclude that the trial court erroneously charged the jury on the burden of proof.

Appellant's second assignment of error is well taken and is sustained.

Based upon our ruling with regard to appellant's first and second assignments of error, we need not address appellant's third assignment of error. App.R. 12(A)(1)(c). We determine that appellant's third assignment of error is rendered moot as a result of our ruling on the first two assignments of error.

Trial court judgment is reversed and this case is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

PATTON, P.J., SPELLACY and HARPER, JJ. concur.