**The PILLSBURY COMPANY, Appellee,**

v.

**ILLINOIS CENTRAL GULF RAILROAD, Appellant.**

No. 81–2285.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1982.

Decided Aug. 26, 1982.

Lawrence C. Brown, Brian B. O'Neill, David F. Fisher, Minneapolis, Minn., for appellee.

Daniel M. Dibble, Karen M. Iverson, Lathrop, Koontz, Righter, Clagett & Norquist, Kansas City, Mo., A. James Dickinson, Stringer, Courtney & Rohelder, Ltd., St. Paul, Minn., for appellant.

Before HEANEY and HENLEY,* Circuit Judges, and BECKER,** Senior District Judge.

HENLEY, Senior Circuit Judge.

This appeal involves a judgment and award of damages in behalf of The Pillsbury Company ("Pillsbury") for losses resulting from the contamination of its flour products with bugs during shipment on the Illinois Central Gulf Railroad ("ICG"). The case was tried on Count I, which alleged a violation of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11), reenacted without substantive change as 49 U.S.C. § 11707(a)(1) (Supp. III 1979), and on Count IV which alleged a claim for punitive damages.[1] The magis-

---

* The Honorable William H. Becker, United States Senior District Judge for the Western District of Missouri, sitting by designation.

** Judge Henley assumed senior status on June 1, 1982.

1. Two other counts, basing claims against the railroad on contract and negligence theories, are not at issue in this appeal.

trate[2] entered judgment for Pillsbury for $37,024.59 actual damages and denied punitive damages.

ICG appeals the district court's finding of liability and one aspect of the damage award. We affirm on both issues.

The shipments of flour products at issue in this appeal took place in August, September and October of 1978. The shipments travelled from Pillsbury's Springfield, Illinois facility to destinations at Fort Wayne, Indiana; Baton Rouge, Louisiana; and Peoria, Illinois. For purposes of this appeal, the significant feature of the shipments is that they were shipper sealed. Empty cars were delivered to Pillsbury for loading in Springfield, where Pillsbury routinely cleaned, fumigated, and inspected the cars prior to loading. After inspection and loading, the cars were sealed by Pillsbury with thin metal bands. The sealed cars were then picked up by ICG at the Pillsbury house track, and were taken to ICG's Ridgely Yard in Springfield. The cars remained in the Ridgely Yard from a few hours to a full day, waiting to be made part of a train.

ICG issued standard bills of lading for the shipments, each with the acknowledgment that the goods were accepted by the railroad "in apparent good order." The shipments were not actually inspected by ICG upon acceptance of the goods.

Upon arrival at destination, the shipments were found to be infested with foreign grain beetles. The beetles were found in the rail cars and on top of bags or boxes of flour products, but were not inside the packages themselves.

The trial court made the factual finding that the ICG Ridgely Yard was the source of infestation. This finding reflected evidence that test cars sent by other carriers did not become infested, and evidence that

in September of 1978 the Ridgely Yard contained fifteen large grain spills totalling approximately 5,000 pounds. The grain piles contained foreign grain beetles, and were hot in the center, forcing the beetles to migrate out of the piles.

On appeal, ICG does not seriously contest the factual findings that the Ridgely Yard was a source of infestation. The carrier contends instead that substantial evidence showed Pillsbury's Springfield facility to be a likely additional source of infestation. In light of this evidence, ICG argues that Pillsbury failed to make a prima facie case of liability. A prima facie case under the Interstate Commerce Act includes a showing that the goods were "deliver[ed to the carrier] in good condition." *Missouri Pacific R. R. v. Elmore & Stahl*, 377 U.S. 134, 138, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964). ICG contends that the bills of lading, which acknowledge the "apparent good condition" of the goods, are insufficient in the circumstances to make a prima facie case.

### A. Standard of Review

The standard of review which applies depends on the terms in which ICG's liability argument is couched. ICG focuses in part on an issue of law, that is, whether a bill of lading is effective to establish the element of delivery in good condition, in circumstances where goods are delivered under seal and where there is some evidence of a shipper source of contamination. ICG also appeals from various factual findings under the clearly erroneous standard.[3]

This court is not at liberty to try a case de novo, and must therefore give great deference to the factual findings of the district court. *Kaiser Aluminum & Chemical Corp. v. Illinois Central Gulf R. R.*, 615

---

**2.** The case was tried to United States Magistrate Floyd L. Boline by consent of the parties, pursuant to the provisions of the Federal Magistrate Act of 1979, Pub.L. 96–82 § 2(2), 93 Stat. 643, codified at 28 U.S.C. § 636(c)(1) (Supp. IV 1980), and Rule 14 of the Local Rules of the United States District Court for the District of Minnesota. Magistrate Boline ordered

entry of judgment in accordance with the statute and ICG appeals directly to this court pursuant to 28 U.S.C. § 636(c)(3).

**3.** ICG contests the findings that the goods were delivered in good condition. The carrier also apparently contests the implicit finding that the Pillsbury plant was not a source of infestation.

F.2d 470, 474 (8th Cir.), *cert. denied*, 449 U.S. 890, 101 S.Ct. 249, 66 L.Ed.2d 116 (1980); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 183 (8th Cir. 1975). Such findings may not, however, be upheld where they are unsupported by substantial evidence or proceed from an erroneous conception of the applicable law. *Kaiser Aluminum & Chemical Corp. v. Illinois Central Gulf R. R.*, 615 F.2d at 474; *Southern Illinois Stone Co. v. Universal Engineering Corp.*, 592 F.2d 446, 451 (8th Cir. 1979).

Under this standard, we consider first the question whether a bill of lading is sufficient to establish plaintiff's prima facie case where goods are delivered under seal, and second, whether the trial court was clearly erroneous in concluding in light of all the evidence that Pillsbury delivered the flour products in good condition.

### B. The Evidentiary Value of the Bills of Lading

ICG contends that a bill of lading acknowledging receipt of the shipper's goods in apparent good order does not make a prima facie case for the shipper where the goods are travelling under seal. *Spartus Corp. v. The S. S. Yafo*, 590 F.2d 1310, 1319 (5th Cir. 1979); *Ed Miniat, Inc. v. Baltimore & Ohio R. R.*, 587 F.2d 1277, 1280 (D.C.Cir. 1978); *Blue Bird Food Products Co. v. Baltimore & Ohio R. R.*, 492 F.2d 1329 (3d Cir. 1974); *Hoover Motor Express Co. v. United States*, 262 F.2d 832 (6th Cir. 1959); *Tuschman v. Pennsylvania R. R.*, 230 F.2d 787, 791 (3d Cir. 1956); *The Niel Maersk*, 91 F.2d 932 (2d Cir.), *cert. denied*, 302 U.S. 753, 58 S.Ct. 281, 82 L.Ed. 582 (1937); *World Wide Meats, Inc. v. Chicago & Northwestern*

*Transportation Co.*, 383 F.Supp. 807, 809–10 (N.D.Iowa 1974). *See also* Annot., 33 A.L. R.2d 867, 872 § 3 (Supp.1982); Annot., 67 A.L.R.2d 1028, 1048 § 8 (Supp.1978).

The reasoning of the cited cases is persuasive. Where goods are shipped under seal, the condition of the goods cannot be within the carrier's knowledge. A bill of lading accordingly can attest only to apparent or external good condition, and in instances the shipper may reasonably be required to present some additional evidence of the condition of the goods at the time of delivery.[4] The carrier, in other words, "should not have the [initial] burden of separating damages arising from causes prior to shipment from damages due to negligent stowage." *The Niel Maersk*, 91 F.2d at 934–35.

Our ruling should not be taken to mean that bills of lading are utterly without evidentiary value as to goods under seal. The documents may be given some weight in establishing the shipper's case. The shipper, however, labors under the burden of presenting additional evidence sufficient to establish by preponderance of all the evidence the condition of the goods upon delivery.[5]

### C. Pillsbury's Evidence

Pillsbury did not rest its case on the bills of lading alone. Hence the issue before us resolves into a determination of whether there was adequate additional evidence of the condition of Pillsbury's flour products when delivered to support a finding of good condition on delivery.

---

**4.** We do not consider here and expressly distinguish the circumstance where the bill of lading is relied upon to establish the good condition of a shipment open to inspection and visible. In this circumstance, we have held that a clean bill of lading without limitation is prima facie evidence of delivery in good condition. *Kaiser Aluminum & Chemical Corp. v. Ill. Central Gulf R. R.*, 615 F.2d 470, 475 & n.4 (8th Cir.), *cert. denied*, 449 U.S. 890, 101 S.Ct. 249, 66 L.Ed.2d 116 (1980).

**5.** We reject Pillsbury's contention that the initial burden is on the carrier to annotate a bill of

lading if he wishes to avoid presumptions arising from boilerplate language to the effect that the shipment is received "in apparent good order." A prudent carrier may annotate the bill of lading to indicate his inability to ascertain the condition of sealed goods. Where the carrier does not so limit the document, however, the burden remains with the shipper to show that sealed cargo was delivered in good condition. As indicated, *supra*, the bill of lading alone is insufficient to satisfy this burden where goods are under seal.

Pillsbury was able to show conclusively that there were no beetles in the packages of flour. Pillsbury also produced substantial evidence of extensive preloading inspection, cleaning and fumigation. This evidence strongly suggests that the cars, when loaded, were free of infestation. Finally, Pillsbury adduced evidence, and the trial court found as a fact, that a test car switched through the Ridgely Yard became infested while one switched to another carrier's yard did not.

ICG argues that although the cars may have been "clean" when loaded and sealed at the Pillsbury Yard, they sat at the Pillsbury facility for two days before movement. ICG contends that bugs entered the cars at this time. The carrier demonstrated that the Pillsbury plant was afflicted with an insect infestation of some proportions during the time in question.

Despite this evidence in ICG's favor, we conclude that Pillsbury satisfied its burden of proof under *Elmore & Stahl.* ICG's evidence was open to question in that the Pillsbury infestation was not conclusively shown to involve foreign grain beetles. The evidence on this crucial point was hotly contested and ambiguous at best. The opportunity for infestation at the Pillsbury Yard was also controverted by testimony from Pillsbury personnel that cars were switched out twice a day.

■ We affirm the district court's conclusion that Pillsbury made out a case of delivery in good condition.[6] *Frosty Land Foods International, Inc. v. Refrigerated Transport Co.,* 613 F.2d 1344, 1347 (5th Cir. 1980); *compare Ed Miniat, Inc. v. Baltimore & Ohio R. R.,* 587 F.2d at 1281 (evidence with slight probative value found so negligible as to be insufficient to satisfy proof required beyond bill of lading when goods are under seal).

---

6. The burden of proof then shifted to ICG to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability. *Missouri Pacific R. R. v. Elmore &*

### D. Damages

Out of a total damage award of $37,024.59, ICG objects to a portion of the $8,310.00 damage award for demurrage charges incurred at the Fort Wayne, Indiana destination. The Fort Wayne facility fumigated all cars originating from Springfield when the infestation became apparent. As a result, there was a backup in the timely unloading of cars at Fort Wayne. Pillsbury was required to pay demurrage charges on the backed-up cars.

■ ICG objects that the damage award includes demurrage charges on cars which did not originate in Springfield. It was foreseeable, however, that charges would arise on all arriving cars from whatever origin when the fumigation effort slowed the unloading of backed-up cars. Such foreseeable damages are allowable. *Hector Martinez & Co. v. Southern Pacific Transportation Co.,* 606 F.2d 106, 108 (5th Cir. 1979) (the Carmack Amendment incorporates common law principles for damages), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980); *Fraser-Smith Co. v. Chicago, Rock Island & Pacific R. R.,* 435 F.2d 1396, 1399 (8th Cir. 1971); *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng.Rep. 145 (1854).

■ ICG also objects that demurrage damages were based on the mere assumption that fumigation delayed unloading by three days. Although this second contention is troublesome, we decline to disturb the award. The trial transcript shows that attorneys for both parties spent the bulk of one night near the end of trial conforming the demurrage figures to the railroad's records. The result was a significant reduction in Pillsbury's damage claim. The transcript also shows that the railroad did not at any time submit an alternative claim or method of calculating demurrage damages, nor did ICG offer evidence that the delay in unloading resulted from causes other than

---

*Stahl,* 377 U.S. 134, 138, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964). ICG does not argue that it met this burden, and could not reasonably so argue given the magistrate's factual findings as to large grain spills on ICG's Ridgely Yard.

fumigation. The demurrage charge had a basis in seventy-seven fumigations at Fort Wayne which were documented in the record. While the proof of damages may have left something to be desired, we believe that the evidence of damages was not wholly speculative. The law does not require mathematical precision in proof of loss, and proof to a reasonable certainty is sufficient. *LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342, 349–50 (8th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982). We conclude that there is sufficient evidence to support the finding of damages in the amount of $8,310.00.

The judgment appealed from is affirmed in all respects.