IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 22, 2009 Session

## MARK VII TRANSPORTATION CO., INC. v.
## RESPONSIVE TRUCKING, INC.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002165-02     James F. Russell, Judge**

_____

**No. W2009-00143-COA-R3-CV - Filed September 18, 2009**

_____

This action arises from an agreement between Appellant Mark VII Transportation Co. and Appellee Responsive Trucking, Inc. Appellant filed suit seeking to recover for breach of contract based on the Carmack Amendment standard of liability adopted by the parties in their agreement and for indemnification as allowed by their agreement. Both parties moved for summary judgment. The trial court denied Appellant's motion for summary judgment and granted Appellee's motion for summary judgment. Finding material issues of fact in dispute, we affirm in part and reverse in part.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed in Part,
Reversed in Part and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Allan B. Thorp, Memphis, Tennessee, for the Appellant, Mark VII Transportation Co. Inc.

Bill M. Wade, Memphis, Tennessee, for the Appellee, Responsive Trucking, Inc.

**OPINION**

**Background**

Appellant, Mark VII Transportation Co. ("Mark VII"), is a motor carrier property broker that arranges for the transportation of property for its customer shippers. Mark VII is not a motor carrier itself; instead, it selects carriers and routes for the shipments of its customers. Appellee Responsive Trucking, Inc. ("Responsive") was one of the motor carriers that Mark VII utilized.

Mark VII and Responsive were parties to an agreement entitled "Contract Motor Carrier Agreement." ("the Agreement"). It included the following provisions which are relevant to this dispute:

10. LOSS OR DAMAGES TO CARGO
The Carrier's liability for loss or damage to cargo transported shall commence upon loading and continue until unloading at destination or at any intermediate point of drop shipment. While this Agreement covers contract carriage, CARRIER agrees it will accept as a standard of liability that standard imposed on common carriers at common law and the provisions of 49 U.S.C. Section 11701 and 10730 (the Carmack Amendment) subject to the regulations of the ICC at 49 CFR Part 1005.

13. INDEMNIFICATION
(b) CARRIER shall defend, indemnify, and hold MARK VII harmless from and against any and all claims, lawsuits, damage costs, expenses, and penalties for damage to the Goods of MARK VII's customer while under the care, custody, or control of CARRIER or damage to the Vehicles in which the Goods are transported, regardless of the cause thereof, including the negligence of MARK VII's customer.

Hasbro/Milton Bradley ("Hasbro") is a manufacturer of games and toys. It ships toys from its factory in East Long Meadow, Massachusetts to various retailers throughout the United States. Mark VII arranged for the transportation of toys with Responsive as the initial carrier

Between June 2000 and November 2002, many of those shipments were allegedly short shipped, meaning that not all the toys that were designated for shipping were delivered at the destination. Responsive's agents or employees loaded each of the shipments at issue. The parties dispute which party, if any, had the responsibility to count the items delivered for shipping. However, Responsive did not have anyone count the items shipped. In each transaction, Responsive's employee would acknowledge the receipt of a specified quantity of toys by signing the bill of lading for each shipment. Once the shipments were loaded, the trailers were then sealed and a guard would check the seal upon leaving the Hasbro property. All the seals remained intact until the toys were delivered. Cynthia Herring, vice president of Responsive testified that the shortages could have occurred during loading or unloading, either before the seal was placed on the trailer or after it was removed.

Hasbro made a claim against Mark VII for each of the short shipments. Based on the agreement, Mark VII made a claim against Responsive for the short shipments. Responsive refused to pay any of the claims contending that there was no proof that the loss occurred while the toys were under its care, custody or control. Mark VII paid Hasbro $129,627.07 and filed suit against Responsive.

Both Mark VII and Responsive filed motions for summary judgment. The trial court denied Mark VII's motion for summary judgment finding that material issues of fact existed. The trial court granted Responsive's motion for summary judgment. Mark VII appeals the grant of summary judgment to Responsive and the denial of its motion for summary judgment.

**Issues Presented:**

Mark VII raises the following issues for our review:

1. Is Responsive liable for the short shipments under the standard of the Carmack Amendment?

2. Is Responsive liable for the claims for breach of its contract to indemnify?

3. Did the trial court err in granting Responsive's motion for summary judgment?

4. Did the trial court err in denying Mark VII's motion for summary judgment?

**Law and Analysis**

**I.**
**Standard of Review for Summary Judgment**

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore de novo with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). In evaluating the trial court's decision to grant summary judgment, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. ***Mooney v. Sneed***, 30 S.W.3d 304, 305–06 (Tenn. 2000); ***Bryd v. Hall***, 847 S.W.2d 208, 210–11 (Tenn. 1993).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. If the moving party's motion is properly supported, "The burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 5 (Tenn. 2008) (citing ***Bryd***, 847 S.W.2d at 215). In order to shift the burden of production, "the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense." *Hannan,* 270 S.W.3d at 5. However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id.* at 8. Instead, the moving party has the more difficult task of demonstrating "that the nonmoving party cannot establish an essential element of the claim at trial." *Id.* at 7.

**II.**
**Contract Interpretation**

The interpretation of a contract is a question of law and not a question of fact. ***Pitt v. Tyree Org., Ltd.***, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002). When interpreting a contract, the court's aim is to ascertain and give effect to the parties' intent. ***Harrell v. Minnesota Mut. Life Ins.***, 937 S.W.2d 809 (Tenn. 1996). Each provision must be construed in light of the entire agreement, and

the language in each provision must be given its natural and ordinary meaning. ***Buettner v. Buettner***, 183 S.W. 3d 354, 359 (Tenn. Ct. App. 2005). When a contract contains both general and specific provisions relating to the same thing, the specific provisions control. Where uncertainty exists between general and specific provisions, the specific provisions will usually qualify the general. ***Cocke County Bd. V. Newport Utilities Bd.***, 690 S.W.2d 231, 237 (Tenn. 1985) (citing 17 Am. Jur. 2d *Contracts* § 270 (1964)). If a contract is unambiguous, a court must interpret it as written and not in accordance with a party's unexpressed intent. ***Pitt***, 90 S.W.3d at 252.

Responsive contends that the agreement limits Mark VII's potential recovery to indemnification under paragraph 13 because Mark VII has already paid Hasbro's claims. Mark VII asserts that it is entitled to seek recovery under either paragraph 10 or paragraph 13 of the agreement, i.e. either for breach of contract or for indemnification. The trial court agreed with Mark VII's position but ultimately ruled that Mark VII failed to prove its claim under either provision.

Responsive also argues that the paragraphs are in conflict and therefore the more specific (paragraph 13) must govern. The agreement, however, does not limit Mark VII to an exclusive remedy. Furthermore, the two provisions are not in conflict. Paragraph 10 merely sets forth the standard of liability agreed to by the parties. Mark VII has alleged that the toys were lost by Responsive and paragraph 10 provides a remedy for that situation. The agreement also requires Responsive to indemnify Mark VII for claims related to the toys shipped. Therefore, Mark VII may assert a claim under both paragraph 10 and 13.

### III.
### Carmack Amendment Standard of Liability

Mark VII relies on paragraph 10 of the contract as the basis for its claim against Responsive for the value of the lost toys. Paragraph 10 states that the *Carmack Amendment, 49 U.S.C. § 14706* provides the standard of liability by which the parties conduct would be judged. The contract further provides that liability for loss or damage to cargo "shall commence upon loading and continue until unloading at destination." The trial court found that Mark VII could not establish the elements of a claim under the Carmack Amendment standard of liability.

Responsive initially argues that the Carmack Amendment is not applicable. It asserts that because Mark VII is a "broker" and not a "shipper" the Carmack Amendment is inapplicable and therefore does not provide Mark VII with a basis of recovery. See ***Edwards Bros., Inc. v. Overdrive Logistics, Inc.***, 581 S.E.2d 570 (Ga. Ct. App. 2003). Responsive is correct in asserting that Mark VII does not have a cause of action under the Carmack Agreement. However, the contract provides that the Carmack Amendment's *standard* of liability would apply to the agreement.

The Carmack Amendment provides a statutory right to shippers to recover for damages to their property caused by carriers involved in shipment. It imposes liability on a carrier when property is transported in the United States under a bill of lading. 49 U.S.C § 14706. "The purpose

of the Carmack Amendment [is] to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Reider v. Thompson*, 339 U.S. 113, 119 (1950). The Carmack Amendment permits "a shipper in interstate commerce to bring an action against the initial carrier to recover for damages to the shipment whether such damages occurred while the goods were in the hands of the initial carrier or connecting carriers." *Mercer Transp. Co. v. Greentree Transp. Co.*, 341 F.3d 1192, 1196 (10th Cir.v 2003)(quoting *L.E. Whitlock Truck Serv., Inc. v. Regal Drilling Co.*, 333 F.2d 488, 490 (10th Cir. 1964). Accordingly, the shipper can hold a carrier liable for damage to cargo without regard to fault. *Id.* at 1196 – 97. The Carmack Amendment makes a common carrier liable for any damage to or loss of property that the carrier receives for transportation. *Plough v. Mason & Dixon Lines*, 630 F.2d 468, 479 (6th Cir. 1980); *Premier Graphics, Inc. v. W. Express, Inc.*, 2008 WL 4415773, at *3 (Tenn. Ct. App. Sept. 26, 2008).

To establish a prima facie case against a carrier under the Carmack Amendment, a plaintiff must prove: (1) delivery of the goods to the carrier in good condition, (2) receipt by the consignee of a lesser quantity of goods at the destination and (3) damages. *Beta Spawn, Inc. v. FFE Transp. Servs. Inc.*, 250 F.3d 218, 223 (3rd Cir. 2001). If the plaintiff establishes a prima facie case, the burden shifts to the carrier to show that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability. *Plough v. Mason & Dixon Lines*, 630 F.2d 468, 470 (6th Cir. 1980). Upon making a prima facie case, an inference of negligence on the part of the carrier arises. *Id.*

The trial court determined that Mark VII failed to establish the first element of its claim under the Carmack Amendment. The parties agree that elements two and three have been established. Accordingly, our analysis focuses on whether the toys where delivered to Responsive in good condition. The trial court found that the bills of lading did not establish delivery. It also found that Responsive did not have a duty to count the items delivered for shipping.

Mark VII relied on the bills of lading signed by the Responsive employees as proof of delivery of the toys in good condition. Indeed, a prima facie showing of delivery in good condition may be made through a bill of lading. *Kaiser Aluminum & Chem. Corp. v. Ill Cent. Gulf R.R. Co.*, 615 F.2d 470, 475 (8th Cir. 1980); see also *Pac. Employers Ins. Co. v. M/V Gloria*, 767 F.2d 229, 242 (5th Cir. 1980); *Blue Bird Food Prods. Co. v. Baltimore & Ohio R.R. Co.*, 474 F.2d 102, 104 (3rd Ci. 1973). Mark VII relies on *Johnson & Johnson v. Chief Freight Lines Co.*, 679 F.2d 421 (5th Cir. 1982), to support its contention that the bills of lading establish a prima facie case that the toys were delivered in good condition. In *Johnson & Johnson,* the court held that

> "[t]he issuance of a bill of lading acknowledges receipt of the goods as described in the bill and further states that the goods were in apparent good order unless otherwise noted...[and] is sufficient to establish a prima facie case against the carrier that the goods were in fact delivered in a good condition."

*Id.* The ***Johnson & Johnson*** court further noted that unless the "shipper load and count or similar notations appear on the face of the bill of lading," a presumption should be established that the damage was not caused by the shipper and the carrier "should have the affirmative burden" of establishing the shipper caused the loss. *Id.*; see also ***Allied Tube & Conduit Corp. v. Southern Pacific Transp. Co.***, 211 F.3d 367, 369 (7th Cir. 2000) and ***Minneapolis St. Paul & Sault Ste. Marie R.R. v. Metal-Matic, Inc.***, 323 F.2d 903, 905 (8th Cir. 1963).

The trial court, however, relied on ***The Pillsbury Co. v. Ill. Cent. Gulf R.R.***, 687 F.2d 241 (8th Cir. 1982), to support its finding that the bills of lading were insufficient to establish delivery. In ***Pillsbury***, the court found that the bills of lading were not prima facie evidence of "delivery in good order" where the goods are traveling under seal. *Id.* at 244. Pillsbury, however is factually distinguishable from the case before us. In Pillsbury, the shipments were loaded and sealed by the shipper. *Id.* at 243. The Pillsbury court reasoned that because the goods were sealed by the shipper, the carrier could not have knowledge of the condition of the goods. *Id.* at 244. The Pillsbury court "expressly distinguished the circumstance where the bill of lading is relied upon to establish the good condition of a shipment open to inspection and visible." *Id.* at n4. Unlike ***Pillsbury***, the toys in this case were not delivered under seal to Responsive. Instead, Responsive's agents loaded and sealed the containers themselves. Because the containers were loaded by Responsive, the toys were open to inspection and visible. Consequently, if no additional facts were present, the bills of lading could be utilized to establish a prima facie case of delivery.

The trial court further reasoned that Responsive was only responsible for loading the toys on the trucks and that Hasbro was responsible for counting the toys. Hasbro provided Responsive with preprinted bills of lading purportedly listing the quantity of the toys. Responsive did not verify the amount of toys delivered. Responsive simply loaded the trailers, sealed them and delivered the merchandise to the appropriate location. The seal placed on each shipment at issue, remained intact until delivery.

Mark VII asserts that as a matter of law, Responsive had the duty to count the toys it loaded. It bases this assertion on the presumption that without some notation, the toys listed on the bills of lading were shipped in good condition. ***Johnson & Johnson***, 679 F.2d at 422. Mark VII argues that because the bills of lading did not contain the notation "shipper's load and count" or similar notation, we are to presume that the carrier is liable for any difference between what the bills of lading show and what was delivered. However, the trial court specifically noted that the bills of lading and loading sheets introduced in this case are incomplete and illegible. We have conducted our own independent review of the bills of lading and are unable to determine what items were delivered for shipping. Because we are unable to determine the amount of merchandise listed on the bills of lading, we are unable to determine if all the toys claimed were delivered to Responsive in good condition. Consequently, a material fact remains in dispute and summary judgment is inappropriate.

## IV.
### Liability under Indemnification Paragraph 13

Part (b) of Paragraph 13 of the agreement, requires Responsive to indemnify Mark VII from and against any claims "for damage of the goods of Mark VII's customer while under the care, custody, or control of" Responsive. This is required regardless of the cause of the damage, including the negligence of Mark VII's customer.

We have concluded that we are unable to determine the number of toys delivered to Responsive for shipping. Since we are unable to determine what was delivered for shipping it is equally apparent that we are also unable to determine when the alleged loss occurred.

It is self evident that a material factual dispute exists regarding when the loss incurred in this case. Each party alleges that it occurred when some other entity had control of the goods. This is a crucial factor that must be first determined before the indemnification clause of the agreement is implicated. Based on the evidence presented to the trial court, it is impossible to make this determination at this juncture. Consequently, we find that the trial court erred when it awarded summary judgment to Responsive on the indemnification claim.

## V.
### Mark VII's Motion for Summary Judgment

Mark VII also filed a Motion for Summary Judgment which the trial court denied. We previously pointed out the existence of material factual disputes that make the grant of summary judgment inappropriate for Responsive. These very same factual disputes make an award of summary judgment equally inappropriate for Mark VII as well. "Summary judgment proceedings have never been envisioned as substitutes for trials of disputed factual issues." *Martin v. Norfolk Southern Railway Company*, 271 S.W.3d 76, 89 (Tenn. 2008)(Koch, J., concurring).

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*EVCO Corporation v. Ross,* 528 S.W.2d 20, 24 –25 (Tenn. 1975).

We find no error in the order of the trial court denying the Motion for Summary Judgment filed by Mark VII**.**

## Conclusion

In summary, we find that Mark VII may pursue its theories of recovery under paragraph 10 of the parties agreement, based on the Carmack Amendment's standard of liability and under paragraph 13 of the agreement for indemnification. We, however, find that disputed material issues of fact remain on both the Carmack Amendment cause of action and the indemnification cause of action that preclude the granting of summary judgment for either party.

The judgment of the trial court granting summary judgment to Responsive is reversed. The judgment of the trial court denying summary judgment to Mark VII is affirmed. The costs of this cause are taxed one-half to the Appellant, Mark VII Transportation Co. Inc. and its surety and one-half to the Appellee, Responsive Trucking.

_____
J. STEVEN STAFFORD, J.