IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 7, 2021 Session

**DAVID L. LILES, ET AL. V. MICHAEL E. YOUNG, ET AL.**

**Appeal from the Chancery Court for Davidson County**
**No. 18-467-IV     Russell T. Perkins, Chancellor**

———————————————————

**No. M2020-01702-COA-R3-CV**

———————————————————

This appeal involves the interpretation of a partnership agreement for the purpose of determining the respective ownership percentages of the partners. After our review of the partnership agreement, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Roger A. Maness, Clarksville, Tennessee, for the appellant, Michael E. Young.

David O. Huff, Nashville, Tennessee, for the appellee, David L. Liles.

**OPINION**

**I. BACKGROUND**

Michael E. Young was a pharmacist in Clarksville,[1] where he owned St. Bethlehem Drugs and IV Solutions, a closed-door pharmacy that prepares IV meds for homes and facilities. At some point, Young decided to move IV Solutions to Nashville. David L. Liles met Young's certified public accountant, Bob Yates ("CPA Yates"), when CPA Yates was looking for a person to serve as chief financial officer for Young's businesses. Young thereafter requested that Liles find a Nashville location for IV Solutions.

---

[1]At some point, Young moved to Scottsboro, Arizona.

Once Liles found a suitable location for IV Solutions, Young purchased the property. Because Liles had a great deal of involvement in IV Solutions, Young decided to involve Liles in the construction of the building for the business. He also offered Liles a partnership interest in return for management of the construction of the property and collection of rents from the tenants. The agreement ("Partnership Agreement") for Downside Risk Professional Properties ("DRPP") was drafted by Young's attorney and signed in 2004. The sole business of DRPP was the development and operation of commercial real estate in Davidson County.

The capital accounts of DRPP were addressed in Article II of the Partnership Agreement. In exchange for an ownership interest of 99% of the partnership, Young would contribute real property located at 213, 215, and 217 W. Maplewood Lane (collectively "the Maplewood property") and Liles would contribute $5,000 in exchange for 1% ownership interest.[2] The details of how the partners' interests would change over time are primarily set out in Article III of the Partnership Agreement. Liles's ownership interest was to increase through his management services:

> DAVID LILES shall supervise, manage and be responsible for the construction and rental of the properties developed pursuant to this Partnership Agreement. In exchange for these services DAVID LILES will have the right to increase his equity stake by applying a management fee … the total being an equitable contribution until such time as DAVID LILES' equity ownership interest equals 20%.

His equity stake would increase by a set percentage of the total rents collected at the Maplewood property: 2% of the net rental from IV Solutions and 7% of rentals paid by all other tenants (hereafter referred to as "service fees"), all to be considered "equitable contributions" to DRPP. Liles's maximum ownership interest was to be capped at 20%, with the Partnership Agreement specifically providing that, "DAVID LILES will at no time receive any cash remuneration for the services he provides other than an increase in his equity ownership interests up to the maximum amount of 20%. . . ."

CPA Yates prepared an example ("Attachment") of how Article III would work. According to Young:

> The [Attachment] prepared by [CPA] Yates would be extended from year to year by Liles as Liles would plug in amounts of his service fee each year after 2006. Liles calculated the numbers that got plugged into the [Attachment] … based on the rents he collected. From an equity standpoint, Liles would add the value for his service fee each year to his side of the ledger in terms

---

[2]The value of the raw land contributed by Young was $470,865.

of capital and subtract it from Young's side in terms of capital.[3]  That was the process Liles used from 2006 down through 2017.  The [Attachment] that [CPA] Yates had prepared . . . assumed an annual appreciation of DRPP's assets of 5%.[4]

According to CPA Yates:

Partnership equity would be determined annually as the Market/Appraised value of the property less any debt.  Appreciation will be recognized by applying a predetermined annual appreciation rate of 5%.

The Attachment was not made a part of the Partnership Agreement.

Pursuant to the Partnership Agreement, Liles did not receive cash remuneration for the service fees related to DRPP.  He did receive a salary from IV Solutions.  According to Young, Liles was initially paid $58,000 per year as IV Solutions' financial officer.  Liles's employment with IV Solutions ended when Young sold the company in 2009 to Amerita.  By that time, Liles's salary with IV Solutions was $110,000 per year.  Young noted that after the sale, Liles received a cash payment of $250,000 from a phantom stock program.

In mid-2017, Young requested that Liles pledge his ownership interest in DRPP to a bank in order for Young to obtain a loan for an unrelated business venture in Scottsdale, Arizona.  When Liles balked at the request, Young decided to dissolve DRPP and buy out Liles's equity stake in the partnership.  When shown the most current Attachment that showed Liles's interest at 19.12%, Young did not agree with it.  Upon Young asking CPA Yates to review the Attachment, Liles's equity interest was argued to be 14.16%.  Young observed:

Using the [Attachment] … Liles had calculated his equity at 19.12%.... [CPA] Yates's firm did not prepare a compilation financial statement for DRPP.  Its involvement was limited to preparing the partnership tax return (form 1065) and partners' K1s.[5]

Sometime after 2004 but before December 31, 2008, a loan or loans were made by IV Solutions to DRPP.  IV Solutions was 100% owned by Young.  On December 31, 2008, Liles made an entry in DRPP's general ledger closing loans to "Partner one" (Young) equity in the amount of $83,405.04.

---

[3]For DRPP, Liles managed the property from 2006 through 2018.  At trial, Liles noted that he was still managing a vacant lot for DRPP by keeping it clean and paying the taxes.

[4]There is nothing in the Partnership Agreement that discusses a 5% appreciation rate.

[5]Liles did not receive a 1099 in any year for the service fees.

Between 2008 and 2015, DRPP borrowed an additional $152,600 from St. Bethlehem Drugs, a company that was 100% owned by Young. Liles made an entry in DRPP's general ledger reclassifying a payable to Partner one equity in the amount of $152,600 on December 31, 2015.

The loans from Young's companies that Liles, himself, classified as capital contributions were omitted from Liles'[s] calculations of the partner's equity....

It is undisputed that during the lifetime of the partnership, Young's total capital contribution to DRPP exceeded $705,000.

This action was filed on April 26, 2018. In August of the same year, DRPP sold its two buildings (213-217 West Maplewood Lane) for $4,000,000, leaving only a vacant lot owned by the partnership and cash of approximately $76,000 as of August 5, 2019, the date of trial.

At trial, Liles tendered the testimony of an expert, CPA Billy Bradford. Upon reviewing the Partnership Agreement, he testified that Liles reached his maximum 20% interest by the end of the fiscal year 2017. Bradford noted that

[t]he service fees . . . are treated as a direct contribution of capital by Mr. Liles, and a direct reduction of the profit, annually, of the partnership. So ... at the end of the analysis, 2017, Mr. Liles' capital account would have attained a balance, percentage-wise, in excess of 20 percent....

Bradford found no basis for the 5% appreciation. He asserted that Liles was entitled to 20% of the net profits from the 2018 sale of a portion of the Maplewood property and from the future sale of the remaining DRPP property. He observed that Liles's capital account in DRPP should be credited for the total amount of his earned service fees, $118,175, as the DRPP tax returns and K-1s were inaccurate and failed to properly credit Liles's capital account for DRPP profits per Article IV of the Partnership Agreement.

The trial court entered its memorandum and order on November 30, 2020. The court found the testimony of Bradford most helpful and observed, inter alia, as follows:

Bradford opined that Liles never received contemporaneous or timely periodic credit for the service fees and that these service fees were [not] recorded, attributed, and reported in the fashion that Bradshaw concluded they should [not] have been under the [Partnership] Agreement or acceptable accounting principles. For the Court, Bradshaw's expert testimony helped clarify and establish three important propositions: 1) Liles' service fee, properly attributed to his capital account, resulted in Liles having a 20%

- 4 -

ownership stake in the partnership; 2) the 5% appreciation factor is not contemplated by the [Partnership] Agreement; and 3) the calculation relied upon by the parties in the interim distribution does not necessarily reflect the net profits from the sale of Buildings One and Two. As to the third point, however, the Court concludes that determining that Liles is entitled to 20% of the net proceeds of the sales of the real property is, more probable than not, the best available proxy for net profit under the [Partnership] Agreement based on the convoluted proof in the record. On the other hand, the Court is not convinced that the [Partnership] Agreement contemplates that Liles is entitled to the 20% interest <u>and</u> a separate credit of more than $118,000 to his capital account as urged by Bradford. The Court, therefore, awards Liles 20% of the net proceeds of the sale of Buildings One and Two, 20% of the sales proceeds of the remaining real estate when it is sold, and 20% of any remaining assets, such as cash. The Court concludes that Liles is not entitled to the credit in the amount of $118,000.00, which was not clear from the pleadings or adequately explained at trial.

The trial court concluded as follows:

In this Court's August 17, 2018 Order ... the Court addressed the sales proceeds of $1,770,617.00, directing that eighty percent (80%) of this amount, or $1,416,493.60, be paid to Young; fifteen percent (15%), or $265,592.55, be paid to Liles; and the remaining 5%, or $88,530.85, be deposited with the Clerk and Master of Davidson County, Tennessee. Based on the Court's conclusion that Petitioner is actually entitled to twenty percent (20%) of the sales proceeds, the Court hereby DIRECTS the Clerk and Master's office disburse to Petitioner Liles the sum of $88,530.85, including all interest earned to date....

This timely appeal followed.

## II. ISSUES

The issues raised on appeal by Young are restated as follows:

1. Whether the trial court erred in holding that Liles has a 20% equity stake interest in DRPP?

2. Whether the trial court correctly held that Liles was entitled to 20% of the net proceeds when DRPP's remaining unimproved property is sold and 20% of the cash on hand?

3. Whether the trial court erred in holding that Liles had a 20% interest in the profits and losses of DRPP?

Liles raised the issue of whether the trial court erred in failing to have Liles's capital account in DRPP increased by $118,175, the total amount of his earned service fees, as these were never allocated to his capital account.

### III. STANDARD OF REVIEW

The interpretation of a written agreement is a question of law and the standard of review is de novo with no presumption of correctness. *Bratton v. Bratton*, 136 S.W.3d 595, 601 (Tenn. 2004); *Mark VII Transp. Co. v. Responsive Trucking, Inc.*, 339 S.W.3d 643, 647 (Tenn. Ct. App. 2009). The language in the agreement must be given its natural and ordinary meaning. *Buettner v. Buettner*, 183 S.W.3d 354, 359 (Tenn. Ct. App. 2005).

### IV. DISCUSSION

### I.

The agreement in this case is unambiguous. A contract is not ambiguous "merely because the parties may differ as to interpretations of certain of its provisions." *Cookeville Gynecology & Obstretics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994). "Neither the parties nor the courts can create an ambiguity where none exists in a contract." *Id.*

The trial court determined that the Partnership Agreement, in Article III, clearly requires that Liles receive an equity stake in exchange for the contribution of services in lieu of cash. It is undisputed that Liles's "percentage interest" or "equity stake" in DRPP began at 1% and, over time, could be increased by his management efforts through application of a designated formula found in Article III of the Partnership Agreement. Specifically, the value of the equity interest being credited is the total dollar amount of 2% of the net rental from IV Solutions and 7% of rentals paid by all other tenants, all to be considered "equitable contributions" by Liles. There is nothing in the Partnership Agreement that required the 5% appreciation, which caused Liles's share of profit/loss to be diluted, and indirectly caused his capital account to be diluted dollar for dollar. Liles's capital account, however, was never credited for any of the service fees earned through his management efforts expended for over a decade.

Young and Yates appear to contend that Liles's service fees should only be used to increase Liles's profit/loss interest in DRPP to the maximum 20%. Article IV of the partnership agreement provides:

- 6 -

SECTION 4.01.  ALLOCATION OF PROFITS AND LOSSES.  The PARTNERSHIP'S net profits and losses for each fiscal year of the PARTNERSHIP and each item of income, gain, loss, deduction, or credit entering into the computation thereof shall be allocated between the PARTNERS in accordance with their ownership interest for each year.

A profits interest in a partnership is only an interest in the income of the partnership, not its assets.  However, the clear language of the Partnership Agreement requires that Liles was to receive an increase in his equity interest (as an equity partner) based on the value of his earned service fees—not a profit/loss interest (income partner).  DRPP's tax returns confirm that Liles's service fees were never reflected as an equitable contribution of capital by Liles.  His ownership interest was shorted because his equity stake was not calculated on an annual basis "after adjustment in accordance with Section 4.01 hereof."  An allocation of profit or loss was the only item ever allocated to Liles's capital account, despite the clear language in the Partnership Agreement to the contrary.

## II.

Section 1.05(c) of the Partnership Agreement determines how Liles will be compensated for his partnership interest when DRPP is terminated.  It provides:

> From the value of the property . . ., any outstanding debt, accrued interest and accounts payable will be deducted with MICHAEL E. YOUNG to then pay DAVID LILES his percentage ownership interests as exists [sic] at the time, but not to exceed twenty percent of the equity, at which time DAVID LILES will sign such documents as necessary to convey his partnership interests to MICHAEL E. YOUNG so that MICHAEL E. YOUNG will own all assets of the PARTNERSHIP in fee simple absolute.

Additionally, the Partnership Agreement notes:

> SECTION 4.03.  DISTRIBUTION OF PROCEEDS UPON SALE.  The net cash proceeds to the PARTNERSHIP resulting from the sale, exchange … or other disposition of all, or any substantial part of the Property shall be distributed and applied in the following manner and order of priority:
>
> …
>
> (d) To the PARTNERS in accordance with their respective Capital Accounts, calculated after adjustment in accordance with Section 4.01 hereof.

Together with the directive from Article III, these provisions require that, year over year, the partners' capital accounts be adjusted in accordance with Section 4.01. As noted earlier, Section 4.01 requires that any item of income, expense, etc., be allocated between the partners according to their respective ownership interests for each year and the last sentence of Article III directs how that must be implemented: "All amounts allocated to DAVID LILES to allow him to increase his equity stake shall be treated as income to DAVID LILES individually and be an expense of the PARTNERSHIP for tax purposes." The Partnership Agreement specifically required an annual credit to Liles's capital account (and a corresponding expense to the partnership). Liles was not compensated (in cash) for his service fees but would be compensated by a credit to his capital account for the value of his service fees. This was never done. The service fees were not treated as income as required by the Partnership Agreement; Liles never received a 1099 in any year between 2005 and 2017 and the value of his service fees was not reflected on his K-1 in any year.

The record supports the determination by the trial court that Liles had achieved a 20% equity ownership stake in DRPP and that Liles is entitled to 20% of the net proceeds of the sales of the real property and remaining assets. We further agree with the trial court that the record does not support that Liles is entitled to a credit of $118,000, as the service fees appear to be reflected in his increased equity stake in DRPP.

## V. CONCLUSION

The judgment of the trial court is affirmed and remanded. The costs of this appeal are assessed to the appellant, Michael E. Young.

_____
JOHN W. MCCLARTY, JUDGE

- 8 -