IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 20, 2023 Session

## MANOLA MCCAIN v. KNOXVILLE HMA PHYSICIAN MANAGEMENT, LLC

Appeal from the Circuit Court for Knox County
No. C-19-128619     E. Jerome Melson, Judge

_____

No. E2023-00319-COA-R3-CV

_____

A defendant employer appeals the trial court's grant of partial summary judgment in this action alleging breach of a plaintiff nurse's employment contract. We conclude that the contract language is unambiguous and that partial summary judgment in favor of the plaintiff was properly granted. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Janet S. Hayes, Knoxville, Tennessee, for the appellant, Knoxville HMA Physician Management, LLC.

Wayne Allen Ritchie, II, James Russell Stovall, Samantha Irina Ellis, and Robin E. McMillan, Knoxville, Tennessee, for the appellee, Manola McCain.

## OPINION

### I.     BACKGROUND

The following facts are undisputed for summary judgment purposes. In 2011, Manola McCain ("Plaintiff") began working as a Certified Nurse Midwife, providing primary care, gynecological care, and prenatal and postpartum care, including care during pregnancy and childbirth. In May 2016, Plaintiff entered into an employment contract—wherein Knoxville HMA Physician Management, LLC ("Defendant") was defined as the "Employer"—to provide Certified Nurse Midwife services under Dr. Leonard Brabson's

supervision at Physicians Regional Medical Center ("Physicians Regional") in Knoxville, Tennessee. At that time, Physicians Regional was one of three hospitals owned and operated by Metro Knoxville HMA, LLC. The other two were North Knoxville Medical Center and Turkey Creek Medical Center. The names of these three hospital locations were assumed names that Metro Knoxville HMA, LLC, registered with the Tennessee Secretary of State. Over the years, Plaintiff applied for practice privileges at each of the three hospitals owned and operated by Metro Knoxville HMA, LLC. She was granted such privileges in a letter signed by three different chief executive officers, one for each location.

Defendant drafted the employment contract. The contract referenced the medical staff Bylaws which is one writing applicable to Tennova Healthcare, Physicians Regional, North Knoxville Medical Center, and Turkey Creek Medical Center. The contract included a Cover Sheet which was incorporated into the contract and stated, "The capitalized terms contained herein, if not expressly defined, shall each have the meaning as set forth in the Cover Sheet, or if not otherwise defined, as determined by Employer in Employer's reasonable discretion." The Cover Sheet designated and defined the capitalized term "Hospital" as Physicians Regional. There was no other definition of the term "Hospital" elsewhere in the contract. The Cover Sheet designated "Address of Employer" as 900 East Oak Hill Avenue, Knoxville, TN 37917. Said address was that of Physicians Regional. Section 5.4 of the contract provided, in pertinent part, as follows:

> Termination without Cause. This [contract] may be terminated by either party for no cause upon sixty (60) days written notice to the other party, or immediately upon the occurrence of any of the following: a) the sale of Employer and/or Hospital, b) transfer of all or materially all of Employer and/or Hospital's assets to an unrelated third-party, c) cessation of all material operations of Employer and/or Hospital, or d) the bankruptcy, insolvency or receivership of Employer or Hospital. Employer shall pay to Employee the equivalent of two (2) month's salary if this occurs.

In October 2018, Plaintiff received a notice stating that Physicians Regional was "permanently closing" and would "permanently cease" operations effective December 28, 2018, and that "all employees that only perform work for the [Physicians Regional] location will have their employment permanently terminated on December 28, 2018." The notice further provided that such employees were "welcome to seek other Tennova Healthcare employment, but they do not have the right to 'bump' employees at other locations from their employment."

Physicians Regional ceased all operations as stated. After Physicians Regional closed, two nurse midwives identified in the record renewed their employment contracts with Defendant in early 2019. Whereas each comparator nurse's previous contract defined

"Hospital" as Physicians Regional, the new contracts Defendant required them to execute defined "Hospital" as North Knoxville Medical Center. Plaintiff, however, did not seek renewal. After receiving the notice, Plaintiff sent a letter to Defendant terminating the employment contract in accordance with Section 5.4 and requesting, among other things, to be paid the equivalent of two months' salary under the employment contract "on account of the basis for the termination of the [contract] (the closure of the Hospital)."

Defendant refused payment. Plaintiff then filed this action. The operative amended complaint filed October 7, 2019, alleged two counts of breach of contract and one count of unjust enrichment. As relevant to the issue on appeal, count one of the amended complaint alleged that Defendant breached the employment contract by refusing to pay Plaintiff two months' salary due under the contract because of the closure of the hospital where she worked, that is, Physicians Regional. Defendant answered the amended complaint on November 1, 2019.

Both parties filed cross-motions for summary judgment. Plaintiff argued that "Hospital" was expressly defined in the employment agreement as Physicians Regional. Defendant argued that "Hospital" should be interpreted as referring to Metro Knoxville HMA, LLC's entire three-campus hospital system because Physicians Regional was one of its assumed names registered with the Tennessee Secretary of State. Defendant claimed that Section 5.4 subsection c) had not been triggered, reasoning that the "Hospital's" operations had not ceased because the other two Metro Knoxville HMA, LLC hospitals, North Knoxville Medical Center and Turkey Creek Medical Center, were still operating.

By order entered November 15, 2021, the trial court initially denied the motions for summary judgment, finding that the evidence in the record did not clearly show the intent of the parties as to the definition of the term "Hospital." The case proceeded through further discovery, after which Plaintiff renewed her motion for partial summary judgment on the issue of the term "Hospital" and its application to her request for payment in accordance with the employment contract, as alleged in count one of the amended complaint.

Following a hearing on the renewed motion for summary judgment and by order entered November 7, 2022, the trial court ruled in Plaintiff's favor, finding that the record established that the contract term "Hospital" referred to a specific geographical location:

> [The] Court finds that it is undisputed that Physicians Regional Medical Center, as that term is used in the contract and by those employees, including the plaintiff, was to refer to a single physical medical treatment location, that being at 900 East Oak Hill Avenue, Knoxville, Tennessee 37917.

There is nothing in the record that convinces this Court that the plain language of the agreement means anything other than the East Oak Hill Avenue [address]. The record in this case demonstrates, with no dispute, that operations were ceased at the location of Physicians Regional Medical Center by reference to the only geographic designation applicable to that entity, that being the 900 East Oak Hill Avenue address.

Hospital, as set forth [i]n the undisputed text of [Section 5.4 of the contract], is identified as a single entity of Physicians Regional Medical Center, which has a single geographic location and reference point, which is not in dispute[.]

[Because] cessation of all material operations at that location did occur[,] accordingly as a matter of law, this Court finds that the employee is entitled to the equivalent of the two months' salary as set forth in this agreement. There being no genuine issue of material fact, the plaintiff is entitled to judgment as a matter of law in such amount.

The case proceeded to trial on the remaining issues identified in counts two and three of the amended complaint, which are not pertinent to this appeal. On February 6, 2023, the trial court entered judgment in Plaintiff's favor in the amount of $22,181.55. This amount represented two months of Plaintiff's salary in accordance with Section 5.4 of the contract, plus prejudgment interest at a 6.75% rate since the December 28, 2018 date of the contract's termination. Defendant appealed.

## II.     ISSUE

We restate the issue on appeal as follows:

Whether the trial court erred in granting summary judgment in Plaintiff's favor on the breach of contract claim enunciated in count one of the amended complaint.

## III.     STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must either submit evidence "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). "[I]f the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)).

When a party files and properly supports a motion for summary judgment as provided in Rule 56, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Rye*, 477 S.W.3d at 265 (quoting Tenn. R. Civ. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." Tenn. R. Civ. P. 56.06.

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye*, 477 S.W.3d at 250. Therefore, "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id*. In reviewing a summary judgment motion on appeal, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019) (citations and quotations omitted).

## IV.    DISCUSSION

In reviewing the trial court's decision on Plaintiff's motion for partial summary judgment, we must interpret her employment contract. Our Supreme Court explained the principles of contract interpretation as follows:

The interpretation of a contract is a matter of law and therefore is reviewed de novo. *See Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335–36 (Tenn. 1983). "When resolving disputes concerning contract interpretation, our task is to ascertain the intention of the parties based upon

the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). If a contract's language is clear and unambiguous, then the literal meaning of the language controls the outcome of the contract dispute. *See Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). Additionally, "all provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Guiliano*, 995 S.W.2d at 95.

*Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 342 (Tenn. 2005). "[T]he strong strain of textualism in Tennessee caselaw demonstrates resolve to keep the written words as the lodestar of contract interpretation." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019). We "'give primacy to the contract terms, because the words are the most reliable indicator—and the best evidence—of the parties' agreement when relations were harmonious, and where the parties were not jockeying for advantage in a contract dispute.'" *Id.* (quoting Feldman, 21 Tenn. Practice § 8:14).

We have previously set forth the following principles in considering whether contract language is ambiguous:

> Contractual language is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons could come to different conclusions as to the meaning of the contract. However, an ambiguity arises in a contract only when contractual terms are susceptible to fair and honest differences, and when both of the interpretations advanced are reasonable.

> A word or expression in the contract may, standing alone, be capable of two meanings and yet the contract may be unambiguous. Thus, in determining whether or not there is such an ambiguity as calls for interpretation, the whole instrument must be considered, and not an isolated part, such as a single sentence or paragraph. The language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.

*Fisher v. Revell*, 343 S.W.3d 776, 780 (Tenn. Ct. App. 2009) (quoting 77 C.J.S. *Contracts* § 304 (citations omitted)).

On appeal, Defendant and Plaintiff renew the arguments made in the trial court, which we have summarized above. There is no dispute that the contract at issue specifically

defines the capitalized term "Hospital" to mean Physicians Regional and that there is no other definition of such term in the contract.[1] It is also undisputed that Physicians Regional was one of a few hospitals that was an assumed name of Metro Knoxville HMA, LLC. Defendant contends that "although Metro Knoxville HMA, LLC's assumed name 'Physicians Regional Medical Center' was used in the [contract], Metro Knoxville HMA, LLC is the 'Hospital' under the [contract]." However, the contract language itself does not support such an interpretation. Most importantly, "Hospital" is a defined contractual term. This is apparent not only on the Cover Sheet, but also elsewhere in the contract. For instance, Section 6.1.2 provides:

> Prior to the Practice Commencement Date, Certified Nurse Midwife shall have and maintain valid and unrestricted all necessary narcotics and controlled substance registration numbers and licenses required for the performance of the duties hereunder (including, but not limited to, all such numbers and licenses required by the Medical Staff Bylaws of *Hospital*, and of each *other hospital* where Certified Nurse Midwife maintains privileges)[.]

(Emphasis added). The above provision clearly differentiates between the previously defined term of "Hospital," meaning Physicians Regional, and any other hospital operated by Metro Knoxville HMA, LLC. When examining the language, we also notice what is not in the contract: any mention of Metro Knoxville HMA, LLC. Defendant also points to the contractual language "one hospital" found in the Bylaws which reads:

> 1.2 <u>DEFINITIONS</u>. As used in these Bylaws, the following terms shall have the meanings set forth below:
>
> (a) "Medical Center" refers to Tennova Healthcare which is comprised of Physicians Regional Medical Center located at 900 East Oak Hill Avenue and North Knoxville Medical Center located at 7565 Dannaher Way, and Turkey Creek Medical Center located at 10820 Parkside Drive. Although these campuses are geographically separated they are considered as one hospital with a single medical staff operating under one set of Bylaws and Rules and Regulations.

Nothing in the above provision can be read to modify the definition of "Hospital" used throughout Plaintiff's employment contract. "When a contract contains both general and specific provisions relating to the same thing, the specific provisions control." *Mark*

---

[1] Again, the contract provided, "The capitalized terms contained herein, if not expressly defined, shall each have the meaning as set forth in the Cover Sheet, or if not otherwise defined, as determined by Employer in Employer's reasonable discretion."

*VII Transp. Co. v. Responsive Trucking, Inc.*, 339 S.W.3d 643, 648 (Tenn. Ct. App. 2009) (citing *Cocke County Bd. v. Newport Utilities Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985)). We hold that the Bylaws' reference to the uncapitalized, undefined words "one hospital" in the definition of "Medical Center" does not modify or create ambiguity with the defined term "Hospital." There is no ambiguity in the employment contract as to the definition of the term "Hospital." As such, it is unnecessary to look past the four corners of the document[2] to determine the parties' intent. The unambiguous language of the contract reveals that the parties intended "Hospital" to refer to Physicians Regional, just as Defendant drafted.

Defendant does not dispute that Physicians Regional ceased all material operations in December 2018 nor that Plaintiff terminated the contract in accordance with Section 5.4 subsection c). Because the contract explicitly states that Plaintiff "shall" be paid "the equivalent of two (2) months' salary" upon "cessation of all material operations of Employer and/or Hospital" and because "Hospital" means Physicians Regional, Defendant owed Plaintiff such payment. With all of the above considerations in mind, we affirm the trial court's November 7, 2022 order granting partial summary judgment in Plaintiff's favor and the February 6, 2023 judgment on count one of the amended complaint.

## V.    CONCLUSION

We affirm the trial court's judgment. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Knoxville HMA Physician Management, LLC.

_____
JOHN W. McCLARTY, JUDGE

---

[2] The Bylaws are included in the four corners of the document because, generally, "writings referred to in a written contract are incorporated by reference into the contract, and must be considered as part of the agreement of the parties." *Lasco Inc. v. Inman Constr. Corp.*, 467 S.W.3d 467, 473 (Tenn. Ct. App. 2015).